FILED
**United States Court of Appeals
Tenth Circuit**

**March 1, 2024**

**Christopher M. Wolpert
Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                    No. 22-7041

GARRETT JOSEPH HURST,

    Defendant - Appellant.
_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:21-CR-00120-BMJ-1)**
_____

Meredith O'Harris (Adam Mueller, with her on the briefs), Haddon, Morgan and
Foreman, P.C., Denver, Colorado, appearing for Appellant.

Lisa C. Williams, Special Assistant United States Attorney (Christopher J. Wilson,
United States Attorney, with her on the brief), Office of the United States Attorney for
the Eastern District of Oklahoma, Muskogee, Oklahoma, appearing for Appellee.
_____

Before **BACHARACH**, **BRISCOE**, and **MORITZ**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

    Defendant Garrett Hurst pleaded guilty to one count of knowingly engaging

and attempting to engage in a sexual act with an Indian who had attained the age of

12 years but not the age of 16 years, and who was at least four years younger than

Hurst, in violation of 18 U.S.C. §§ 2243(a), 2246(2)(A), 1151, and 1152. At sentencing, the district court varied upward from the advisory Guidelines imprisonment range and imposed the maximum term of imprisonment of 180 months, to be followed by a thirteen-year term of supervised release. Hurst now appeals, arguing that (1) the district court erred in rejecting a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement that was proposed by the parties, (2) the district court erred in concluding that Hurst was ineligible for a two-point reduction for acceptance of responsibility, (3) the sentence imposed by the district court was substantively unreasonable, and (4) the district court committed plain error by failing to explain why it selected a thirteen-year term of supervised release. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

I

The following facts are taken from the presentence investigation report that was filed in this case and adopted by the district court at the time of sentencing. ROA, Vol. III at 364. The Town of Muldrow, Oklahoma is located within the special maritime and territorial jurisdiction of the Cherokee Nation Reservation. At approximately 2:30 a.m. on the morning of December 24, 2020, two officers from the Muldrow Police Department, Riley Brooks and John Farmer, were on patrol when they observed a vehicle parked on a dead-end road on a parcel of private property within the city limits. The officers recognized the vehicle as one that was suspected of being involved in reports of the driver impersonating a Fort Smith, Arkansas

police officer.  The two officers approached the vehicle on foot and witnessed a visible light bar in the back of the vehicle.  The officers then initiated contact with the driver, who they identified as Hurst.  In speaking with Hurst, the officers observed a young female, later identified as thirteen-year-old A.S., who was an enrolled member of the Cherokee Nation, laying in the reclined front passenger seat of the vehicle.  Officer Brooks also observed a dash cam video recorder mounted on the front windshield of the vehicle.  After the officers spoke with Hurst, Hurst agreed to take A.S. back to her residence.  The officers followed Hurst as he drove A.S. back to her residence and dropped her off at the front door.  Hurst then quickly left A.S.'s house before the officers were able to return his identification card to him.

The officers spoke to A.S.'s father, who told them he did not know where A.S. had been.  A.S. explained to the officers that she had snuck out of her home and took her father's cellphone with her.

During a shift change on the morning of December 24, 2020, Officer Brooks, who was completing his shift, informed Officer Mark Harkins, who was beginning his shift, of the encounter with Hurst and A.S. earlier that morning.  Officer Harkins decided to investigate the matter further.  Officer Harkins went to A.S.'s residence that morning and spoke with A.S.'s father.  A.S.'s father agreed to allow Officer Harkins to speak with A.S.  A.S. told Officer Harkins that she met Hurst in Roland, Oklahoma, approximately a month-and-a-half earlier.  A.S. stated that Hurst obtained her cellphone number and the two began to exchange text messages.  According to A.S., she texted Hurst on the evening of December 23, 2020, and asked him to pick

3

her up.  A.S. stated that Hurst picked her up at her house at approximately 9:00 p.m. that evening and the two drove around Muldrow.  A.S. stated that Hurst repeatedly tried to persuade her to go to his house with him, but she declined to do so.  A.S. stated that at some point, Hurst parked his car in the isolated location where the two officers later found them early on the morning of December 24, 2020.  According to A.S., Hurst showed her how the front passenger seat could be adjusted so that it lay flat like a bed.  A.S. stated that at approximately that same time, Hurst began to bite his bottom lip in a suggestive manner and placed his hand on her thigh.  A.S. told Officer Harkins that Hurst's behavior led her to believe he wanted to have sex with her.  A.S. stated that she repeatedly asked Hurst to take her home, but that Hurst ignored her requests.  A.S. disclosed that she and Hurst had sex in Hurst's vehicle prior to the two officers arriving and speaking with Hurst.

After obtaining this information from A.S., Officer Harkins discontinued the interview with A.S. and advised A.S.'s father that she needed to be medically and forensically evaluated.  A.S. provided Officer Harkins with the items of clothing she was wearing when she was with Hurst on the early morning hours of December 24, 2020.  Officer Harkins transported A.S. and her father to a facility in Fort Smith for a forensic interview and medical evaluation.

During the forensic interview, A.S. stated that while she was in the car with Hurst in the early morning hours of December 24, 2020, Hurst touched her vagina over and under her shorts and also placed her hands on his penis.  A.S. further stated that Hurst eventually "got on top of her, pulled his pants down and inserted his penis

4

into A.S.'s vagina." *Id.*, Vol. II at 124. "A.S. indicated [that] while Hurst raped her, he was seen moving the dash cam video recorder located on the front windshield of the vehicle." *Id.* A.S. stated, however, that she was "not aware where Hurst was pointing" the video recorder "or whether the device was turned on." *Id.* "A.S. believed [that] Hurst ejaculate[d] on her shorts and on the front seat of the vehicle." *Id.* According to A.S., she asked Hurst how old he was, "but he would not answer." *Id.*

During the medical evaluation, swabs were collected from A.S.'s vagina, anus, mouth, and neck and sent to the Oklahoma State Bureau of Investigation (OSBI) for forensic testing. On December 30, 2020, officers from the Muldrow Police Department collected buccal swabs from Hurst and submitted them to the OSBI for forensic testing. On June 1, 2021, the OSBI issued a report stating that human male DNA was detected on the vaginal swabs taken from A.S. The report concluded, based upon a comparison of this human male DNA to the buccal swabs taken from Hurst, that Hurst was the contributor of the DNA detected on the vaginal swabs taken from A.S.

Following the interviews with A.S. on December 24, 2020, officers from the Muldrow Police Department went to Hurst's home and arrested him for the suspected rape of A.S. The officers searched and inventoried Hurst's vehicle. During that process, the officers found, in relevant part, a windshield-mounted camera. The officer also conducted a "manual forensic search" of the cellphone that Hurst had used to communicate with A.S. *Id*. at 125. That search revealed that Hurst had been

5

in communication with A.S. by way of text messages and phone calls since the middle of November 2020.

## II

On March 31, 2021, a criminal complaint was filed in the United States District Court for the Eastern District of Oklahoma charging Hurst with one count of sexual abuse of a minor in Indian Country, in violation of 18 U.S.C. § 2243(a)(1), 1151, and 1152.

On April 16, 2021, a federal grand jury returned a one-count indictment charging Hurst with knowingly engaging and attempting to engage in a sexual act with "an Indian who had attained the age of 12 years but not the age of 16 years, and who was at least four years younger than the defendant," in violation of 18 U.S.C. §§ 2243(a), 2246(2)(A), 1151, and 1152.  ROA, Vol. I at 20.

On July 23, 2021, Hurst filed a petition to enter a plea of guilty to the single count alleged in the indictment.  Along with the petition, Hurst filed a copy of a written plea agreement that he had entered into with the government "pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure." *Id*. at 34.  The plea agreement included a section titled "SENTENCING RECOMMENDATION(S)" that stated, in relevant part, that the parties "agree[d] that a sentencing range of 24-30 months imprisonment [wa]s the appropriate disposition of the case." *Id*. at 41.

The district court held a change of plea hearing on that same date. *Id*., Vol. III at 6.  The district court advised Hurst during the hearing that it "c[ould] reject this plea agreement if [it didn't] find it in the interest of justice." *Id*. at 25.  Based upon

6

Hurst's responses under oath, the district court found that he was "competent to enter this plea, that it [wa]s entered voluntarily," and that "there [wa]s a basis in fact for th[e] plea." *Id*. at 28–29. Consequently, the district court "f[ound] [Hurst] guilty as charged." *Id*. at 29.

On December 17, 2021, the probation office issued a presentence investigation report (PSR).[1] The PSR calculated a total offense level of 19, a criminal history score of 15, and a criminal history category of VI. Based upon these calculations, the PSR arrived at a "guideline imprisonment range [of] 63 months to 78 months." *Id*., Vol. II at 65. The PSR noted, however, that "[i]f the Court adopt[ed] the terms of the plea agreement, the guideline calculations would be as follows 24 to 30 months custody," meaning that "the impact of the plea agreement [would be] 33-48 months." *Id*.

On March 22, 2022, the district court held a sentencing hearing. *Id*., Vol. III at 31. At the outset of the hearing, the district court advised the parties that, after reviewing the PSR, it "w[ould] not be accepting the parties' plea agreement" because it "d[id] not believe it [wa]s in the interest of justice given the facts and circumstances of this case as well as the defendant's lengthy and violent criminal history." *Id*. at 33. Government counsel, in response, acknowledged that the parties had "miscalculated" the guideline sentencing range in the original plea agreement

---

[1] The probation office issued an initial PSR on November 30, 2021, but subsequently revised it to reflect a successful objection made by Hurst to the originally calculated total offense level.

and advised the district court that the parties had "come to an alternative resolution of a plea, pursuant to Rule 11(c)(1)(C), where the [sentencing] range would be . . . the guideline range that was recommended in the [PSR] of 63 to 78 months." *Id*. In other words, government counsel advised the district court that the parties had agreed to the terms of an amended plea agreement. Government counsel argued that, although the advisory guideline sentencing range in the PSR was "somewhat still low range," "a guideline sentence [wa]s [nevertheless] appropriate because it w[ould] save the victim . . . from having to face the trauma of trial." *Id*. at 34. The district court expressed concern to government counsel "that th[e] conduct that lead us here could very well continue and unfortunately occur again with other victims." *Id*. (question mark omitted). The district court also, in conversing with defense counsel on the record, noted that its rejection of the original plea agreement was not "based exclusively on [Hurst's] criminal history," but also "the nature and circumstances of this offense." *Id*. at 40. Later in the hearing, defense counsel advised the district court that the amended plea agreement was "identical" to the original plea agreement, "with one exception," i.e., the originally agreed-upon sentencing range of "24 to 30" months had been "crossed out . . . and replaced . . . with 63 to 78 months." *Id*. at 40–41. The district court stated in response that it was "rejecting this amended plea agreement as well" because it was not "in the interest of justice for the reasons as previously articulated." *Id*. at 42. The district court then asked Hurst how he wished to proceed. Defense counsel stated, in response, that Hurst's "preference would be to have more time to consider what a likely outcome w[ould] be at trial," but that "[i]f

8

pressed by the Court, under the circumstances, . . . he w[ould] withdraw his guilty plea" in order to "figure out what [to] do." *Id*. at 43. The district court continued the case for thirty days to allow Hurst an opportunity to decide how to proceed.

Hurst formally withdrew his guilty plea on April 21, 2022. The district court in turn set the case for trial beginning in May 2022.

On May 10, 2022, a grand jury returned a superseding indictment charging Hurst with one count of knowingly engaging and attempting to engage in a sexual act with "an Indian who had attained the age of 12 years but not the age of 16 years, and who was at least four years younger than the defendant," in violation of 18 U.S.C. §§ 2243(a), 2246(2)(A), 1151, and 1152. *Id*., Vol. I at 50.

The case proceeded to jury qualification and selection on May 18, 2022. The trial then commenced on May 24, 2022. The government presented testimony from eleven witnesses that day and then rested its case. Hurst moved for judgment of acquittal, which was denied by the district court.

Immediately following the district court's denial of Hurst's motion for judgment of acquittal, Hurst entered a plea of guilty to the single count alleged in the superseding indictment. In accepting Hurst's guilty plea, the district court advised him of his rights and, in particular, advised Hurst that the punishment imposed could "be the same as any punishment that would result with you simply going to trial" and that the court was not bound by the recommendations of the parties. *Id*., Vol. III at 337. Hurst stated under oath that he understood this. *Id*. The district court accepted Hurst's plea, finding that Hurst was "competent to enter th[e] plea, that it [wa]s

9

entered voluntarily and with a full understanding of the rights being given up." *Id*. at 341. The district court also ordered a supplement to the PSR.

On June 1, 2022, the probation office prepared a supplemental PSR. The supplemental PSR applied a total offense level of 20, a criminal history category of VI, and a resulting Guidelines imprisonment range of 70 to 87 months. The government objected, arguing, in relevant part, that Hurst was not entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) because "[he] exercised his right to trial by jury and only at the conclusion of the Government's case and the denial of his Rule 29 Motion did [he] enter a plea of guilty." *Id*., Vol. II at 112. The probation officer agreed with this objection and revised the PSR accordingly. The final PSR, which was issued on June 27, 2022, applied a total offense level of 22, a criminal history category of VI, and a resulting Guidelines imprisonment range of 84 to 105 months.

On August 31, 2022, the district court held a sentencing hearing for Hurst and adopted the final PSR. The district court varied upwards from the advisory Guidelines range and sentenced Hurst to a term of imprisonment of 180 months, to be followed by a thirteen-year term of supervised release.

After final judgment was entered in the case, Hurst filed a timely notice of appeal.

### III

Hurst raises four issues on appeal. He first argues that the district court erred in rejecting the parties' amended plea agreement. Next, Hurst argues that the district

10

court erred as a matter of law in concluding that he was ineligible for a two-point reduction in his offense level for acceptance of responsibility. Third, Hurst argues that the district court's imposition of the statutory maximum sentence of 180 months was substantively unreasonable. Lastly, Hurst argues that the district court plainly erred by failing to explain why a thirteen-year period of supervised release was appropriate. For the reasons outlined below, we reject all of these arguments.

A

Hurst argues in his first issue on appeal that "[t]he district court erred in rejecting the parties' [amended] Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement." Aplt. Br. at 9. "We review a district court's decision not to accept a plea agreement for abuse of discretion." *United States v. Vanderwerff*, 788 F.3d 1266, 1271 (10th Cir. 2015). "'A district court abuses its discretion if its adjudication of a claim is based upon an error of law.'" *Id*. (quoting *United States v. Crowe*, 735 F.3d 1229, 1244 (10th Cir. 2013)). "Similarly, when a district court predicates its ruling on an 'improper and irrelevant factor,' this error 'provides a strong indication that the district court abused its discretion.'" *Id*. (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1132 (10th Cir. 2010)).

"The 'starting point' for an inquiry into a district court's rejection of a guilty plea is Rule 11 of the Federal Rules of Criminal Procedure." *Id*. (quoting *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995)). "Rule 11 provides: 'An attorney for the government and the defendant's attorney . . . may discuss and reach a

11

plea agreement.'" *Id*. (quoting Fed. R. Crim. P. 11(c)(1)). "The district court may then either accept or reject that agreement in its substantial discretion, '[b]ut that discretion is not without limit.'" *Id*. (quoting *United States v. Rakes*, 510 F.3d 1280, 1286 (10th Cir. 2007)).

"Plea bargains are commonly either 'charge bargains,' where the prosecutor agrees to drop some charges in exchange for a guilty plea on others, or 'sentence bargains,' where the prosecutor agrees to support, or at least not oppose, a particular sentence." *Id*. (quoting *Robertson*, 45 F.3d at 1437). "Courts enjoy considerable discretion in their consideration of sentence bargains because 'the prosecution's role . . . is strictly advisory,' but judicial discretion is more limited with respect to charge bargains because such bargains 'are primarily a matter of discretion for the prosecution' and the 'court's sentencing discretion is implicated only as an incidental consequence of the prosecution's exercise of executive discretion.'" *Id*. (quoting *Robertson*, 45 F.3d at 1437–38).

There is no dispute that the parties' amended plea agreement in this case was a sentence bargain. The amended plea agreement did not include any agreement by the government to drop charges in exchange for Hurst's guilty plea; indeed, Hurst was only indicted on a single charge. Nor did the amended plea agreement include any agreement by the government to allow Hurst to plead guilty to a lesser charge than alleged in the indictment. Instead, the amended plea agreement included the government's agreement that, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, a sentencing range of 63 to 78 months was "the appropriate

disposition of the case." ROA, Vol. I at 41 (quoting language of first plea agreement); *see id.*, Vol. III at 33–34 (transcript of sentencing hearing at which government counsel described the terms of the parties' amended plea agreement, which was identical in all but one respect to the original plea agreement). Because the parties' amended plea agreement was a sentence bargain, the district court had "considerable discretion" to accept or reject it. *Vanderwerff*, 788 F.3d at 1271.

Hurst argues that when the district court rejected the amended plea agreement, it "explained it was primarily concerned with two things: Mr. Hurst's criminal history and the 'nature and circumstances of [this] offense.'" Aplt. Br. at 15–16 (quoting ROA, Vol. III at 39[2]). Hurst argues that "[b]ased on the court's statements, it appears that these two things led the court to believe either that [he] had committed other sexual assaults for which he had not been caught, or that he would commit additional sexual assaults if released from prison too soon." *Id.* at 16. Hurst argues that "there was no evidence—and certainly not a preponderance of evidence—that

---

[2] It should be noted that this citation is to the original sentencing hearing that was held on March 22, 2022, at which the district court rejected the parties' original and amended plea agreements. Notably, the district court's reference to Hurst's criminal history came after the district court rejected the original plea agreement, while it was considering whether to accept the amended plea agreement, and was in direct response to defense counsel's argument that Hurst's criminal history was driven largely by "alcohol and drug use" and that his criminal offenses were "the kind . . . that you see in communities of poverty." ROA, Vol. III at 37. The district court stated in response that it "ha[d] no doubt that his struggles with alcohol likely contributed to many of the decisions that he's made, even with respect to his violent behavior." *Id.* at 39. The district court further stated that it found "[t]he nature and circumstances of this offense . . . equally troubling, if not more troubling," than his criminal history. *Id.*

[he] had committed prior sexual assaults for which he hadn't been caught." *Id*. He notes in support that "his prior offenses were largely drug and alcohol related, with some physical assaults, but no sex offenses suggesting he was a repeat offender." *Id*. Thus, Hurst argues, "[t]he district court's contrary conclusion . . . appeared to be based on 'suspicions' or speculation," which are an improper basis for a sentencing decision. *Id*.

Hurst further argues that "the 'nature and circumstances of [the] offense' did not support a conclusion that [he] was or would be a repeat sex offender." *Id*. at 17. Hurst argues that "[i]n concluding otherwise, the court pointed to a dash cam in [his] car and the fact that police seized women's underwear from [his] home." *Id*. He argues that it was not reasonable for the district court to infer from this evidence that he "had committed other sex offenses." *Id*. He argues in support that "[i]t is entirely speculative that the presence of a dash cam" or "the seizure of women's underwear" "meant that [he] had committed or was planning to commit other sex offenses." *Id*. Hurst further argues that any such inference "was incorrect" because his father testified at sentencing, "without contradiction and without being cross-examined by the government," "that he [the father] purchased the dash cam for his car . . . and that the purpose of the dash cam was to have evidence of fault if there was ever a car accident." *Id*. Hurst notes that his "father also testified that the women's underwear belonged not to any victim but to . . . Hurst's ex-fiancé, who had moved out without taking all her clothes." *Id*. at 17–18.

Lastly, Hurst argues that the amended plea agreement, "unlike the [original] plea agreement," "did not give [him] a discount off what the guidelines anticipated as an appropriate sentence." *Id*. at 19.  He argues that "[b]ecause the [amended] plea agreement stipulated to a sentence within the applicable guidelines range, the [district] court should have given it more consideration so as to avoid an unwarranted sentencing disparity between similarly situated defendants." *Id*.

In order to address Hurst's arguments, we begin by recounting in some detail what transpired at the original sentencing hearing on March 22, 2022.  The district court opened the March 22, 2022 sentencing hearing by "announc[ing] that [it] w[ould] not be accepting the parties' [original] plea agreement."  ROA, Vol. III at 33.  The district court explained: "I do not believe it is in the interest of justice given the facts and circumstances of this case as well as the defendant's lengthy and violent criminal history."  *Id*.  After hearing the district court's announcement, the government's counsel stated that the parties "ha[d] come to an alternative resolution of a plea, pursuant to Rule 11(c)(1)(C), where the range would be—the guideline range that was recommended in the presentencing report of 63 to 78 months."  *Id*.  Government counsel further stated: "We think a guideline sentence is appropriate because it will save the victim in this case, who is a minor, from having to face the trauma of trial."  *Id*. at 34.  The district court responded by stating that it "appreciate[d] [the government's] concern" for the victim, but it asked government counsel whether, "as part of your consideration" of the amended plea agreement, there was any "discussion about threats to the public at large, the prospect that this

conduct that lead us here could very well continue and unfortunately occur again with other victims?" *Id*. Government counsel responded: "Yes, Your Honor. Unfortunately, with these types of cases that's always a concern, and it's always something that we consider, and so it's sort of a balancing act that we have where we want to prevent more trauma from occurring to this particular victim, at the same time protecting the public from this defendant." *Id*. at 35.

The district court then asked Hurst's counsel to comment on the amended plea agreement. Defense counsel focused on Hurst's criminal history and argued that Hurst's criminal history score and category overrepresented the seriousness of his past criminal offenses. Defense counsel further argued that, in terms of Hurst's "danger to the public at large," his prior convictions were related to "alcohol and drug use" and that his criminal history generally exhibited "the signs of the kind of offenses that you see in communities of poverty." *Id*. at 37. Defense counsel also argued that, to the extent the district court "ha[d] suspicions that maybe there was other conduct that [Hurst] ha[d] not been caught for," that was not reflected by Hurst's criminal history and that the federal offense of conviction was merely "a crime of opportunity" involving "a victim who was failed by society." *Id*. at 37–38. Relatedly, defense counsel argued that it was "unfortunate that this course of criminal conduct occurred" but that "there are not the . . . kind of signals that would indicate that we have some previously uncaught serial rapist here." *Id*. at 38.

At the conclusion of defense counsel's arguments, the district court stated that it had "no doubt that [Hurst's] struggles with alcohol likely contributed to many of

16

the decisions that he's made, even with respect to his violent behavior." *Id*. at 39. The district court emphasized, however, that Hurst's "criminal history alone" was "not the sole factor and the sole basis of th[e] Court's concerns." *Id*. The district court explained that, in its view, "[t]he nature and circumstances of this offense [we]re equally troubling, if not more troubling." *Id*. The district court "point[ed] to the fact . . . that here we have a defendant who is what I believe 35 years old and the victim was a 13-year-old girl." *Id*. The district court also noted "the fact that it almost seems as if this is a situation that—what may—or I couldn't glean incredibly [sic] from the PSR, but the use of—or the presence of cameras or recording devices, the use of the defendant's younger brother to cultivate this relationship." *Id*. at 39–40. The district court stated: "All these things are of great concerns [sic] for me and things that I have weighed and continue to weigh and will continue to weigh either now or in the future, depending on what transpires here today." *Id*. at 40. The district court also stated that Hurst's criminal history was "one aspect," but again emphasized that, in its view, "the nature and circumstances of this offense alone justif[ied] the rejection of [the original] plea agreement." *Id*.

Ultimately, after hearing briefly from Hurst's counsel, the district court stated that, "given [its] prior articulation of its concerns and for the reasons that were previously announced with respect to the initial 11(c)(1)(C) plea agreement," it was "rejecting th[e] amended plea agreement as well." *Id*. at 42.

Returning to Hurst's arguments on appeal, we note that nothing in the record indicates that the district court denied the amended plea agreement on the grounds

17

that it "believe[d] . . . that Mr. Hurst had committed other sexual assaults for which he had not been caught." Aplt. Br. at 16. Thus, we summarily reject that argument.

The record on appeal does, however, provide some support for Hurst's assertion that the district court was concerned that "he would commit additional sexual assaults if released from prison too soon." *Id*. After government counsel informed the district court that the parties had an amended plea agreement they wanted the district court to consider, the district court asked government counsel whether the government's consideration of the terms of the amended plea agreement included any "discussion about threats to the public at large, the prospect that this conduct that lead us here could very well continue and unfortunately occur again with other victims?" ROA, Vol. III at 34. This comment does seem to suggest that the district court was concerned about the possibility of Hurst reoffending upon release from imprisonment. That said, however, the district court made no other mention of this concern in rejecting the amended plea agreement. Thus, it is difficult to determine if the district court actually relied on this concern in determining Hurst's sentence. Further, it is unclear from this single statement whether the district court was concerned about Hurst committing another sexual offense upon release from prison, or more generally committing additional criminal offenses.

Assuming, for purposes of argument only, that the district court did rely on this concern in determining Hurst's sentence, we conclude that there was a basis in the record to support the district court's concern about him reoffending. Hurst's criminal history, as detailed in the PSR, was lengthy, beginning when he was

18

approximately nineteen years old, and continuing up until the time he committed the offense of conviction in this case. Further, many of Hurst's offenses of conviction, as well as at least two state charges that were pending at the time of sentencing in this case, were violent in nature and involved female victims. These included: (1) a January 3, 2009 offense of battery in the second degree that occurred when Hurst got into a physical argument with his girlfriend and a witness who attempted to intervene; Hurst assaulted the witness repeatedly in the head with a golf club, and also punched and choked the witness, causing the witness to collapse to the ground; (2) a July 15, 2010 offense of domestic abuse and assault and battery, during which Hurst hit his girlfriend in the face, twisted her arms, slammed her to the floor, and twisted her neck in an attempt to break it; (3) a March 24, 2015 offense of domestic assault and battery by strangulation, during which Hurst allegedly choked his girlfriend in the kitchen of their home and then chased after his girlfriend in a high speed automobile chase; (4) a November 24, 2015 offense of domestic assault and battery, during which Hurst threw an unknown object at his girlfriend's head, causing her to bleed, and then pushed her into the shower and began spraying water on her head in an attempt to wash the blood away; (5) an August 19, 2016 offense of domestic assault and battery by strangulation, during which Hurst allegedly hit a woman (apparently an ex-girlfriend) on the back of her head, pulled her hair, took control of her vehicle, made her walk through the woods, held her down on train tracks while a train was coming, and punched her lips about five to six times; (6) an October 10, 2019 offense of domestic abuse and assault and battery, during which

19

Hurst allegedly hit his girlfriend in the face, injuring her jaw, and then grabbed her by the throat; and (7) a March 5, 2020, offense of disturbing the peace, during which Hurst allegedly threatened to kill both of his parents, assaulted his father, and threw a television remote at his mother, almost knocking her teeth out. Some of Hurst's offenses also presented a danger to the public and/or exhibited a disregard for law enforcement. These included: (1) a July 17, 2016 offense of endangering others while eluding/attempting to elude a police officer, during which Hurst was observed by a police officer driving 102 miles per hour in a 45 miles per hour zone; Hurst then extinguished his lights in an attempt to elude the officer, and subsequently engaged in a high-speed chase during which Hurst drove into oncoming traffic on multiple occasions without his headlights on; (2) an August 19, 2016 offense of eluding/attempting to elude a police officer, during which Hurst fled from a police officer at a high rate of speed; (3) a January 25, 2017 offense of public intoxication, during which Hurst continually spit on the back seat of the patrol unit following his arrest; and (4) a December 30, 2020 offense of impersonating a public officer, during which Hurst allegedly followed a police department employee in his vehicle and activated a white strobe light inside of his vehicle to mimic a police vehicle. Although there is no record of Hurst previously committing rape or sexual assault, the record does clearly suggest that the relatively light sentences that Hurst received for his past crimes did nothing to deter him from committing additional crimes.

As to the possibility of Hurst committing similar sexual offenses in the future, the record in this case indicates that Hurst met the victim "through his 15-year-old

20

younger brother," who allegedly told the victim that Hurst "was 21 years old."  ROA, Vol. II at 48.  The victim allegedly asked Hurst "how old he was, but he would not answer."  *Id*.  Thus, the record suggests that Hurst took advantage of the victim's youth and inexperience in order to persuade her that he was much younger than he actually was and, in turn, to sexually exploit her.  Given these facts, the district court may well have concluded that imposing a longer sentence could potentially help prevent, or at least lessen the chances of, Hurst committing a future offense of a similar nature.  Although Hurst is correct that there is nothing in the record that specifically indicates that he is at high risk of committing future sexual offenses, it appears that the district court acted well within its discretion in imposing a sentence that would help prevent any future such offenses.

That leaves only Hurst's argument that the district court should have given the amended plea agreement "more consideration" because it "did not give [him] a discount off what the guidelines anticipated as an appropriate sentence" and also "to avoid an unwarranted sentencing disparity between similarly situated defendants." Aplt. Br. at 19.  We reject this argument.  As we have already noted, the district court reasonably concluded that the advisory Guidelines sentencing range was too low given the nature of the offense of conviction and Hurst's lengthy and violent criminal history.  As for Hurst's sentencing disparity argument, he points to no specific, comparator cases involving similarly situated defendants that would help establish that the district court failed to adequately consider, as outlined in § 3553(a)(6), the need to avoid unwarranted sentence disparities among defendants with similar

21

records who have been found guilty of similar conduct. *See United States v. Walker*, 74 F.4th 1163, 1206 (10th Cir. 2023) (considering seven comparator cases offered by defendant in support of his argument for a particular sentence). To the extent he is simply referring generally to any defendant who has the same Guideline range as he does, that alone is insufficient because § 3553(a)(6), in referring to similarly situated defendants, clearly contemplates defendants with similar criminal history who committed similar crimes.

B

In his second issue on appeal, Hurst argues that the district court erred in concluding that he was ineligible for a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). "[W]hether a defendant has accepted responsibility is a factual question that we review for clear error." *United States v. Lozano*, 514 F.3d 1130, 1133 (10th Cir. 2008). "'The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason the determination of the sentencing judge is entitled to great deference on review.'" *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) (internal quotation marks omitted)).

Section 3E1.1(a) of the Sentencing Guidelines provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the sentencing court should "decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). "The burden is on the defendant to prove, by a preponderance of the evidence, his

entitlement to the sentence reduction." *United States v. March*, 999 F.2d 456, 463 (10th Cir. 1993).

The Application Notes to § 3E1.1 provide guidance for determining whether a defendant has demonstrated acceptance of responsibility for the offense of conviction. To begin with, Application Note 1 provides, in relevant part, that "[i]n determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:" (1) "truthfully admitting the conduct comprising the offense(s) of conviction," (2) "post-offense rehabilitative efforts (e.g., counseling or drug treatment)," and (3) "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1. Application Note 3 provides that the "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 . . . will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a)." *Id*., cmt. 3. Lastly, Application Note 5 provides that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" and, "[f]or this reason, the determination of the sentencing judge is entitled to great deference on review." *Id*., cmt. 5.

A defendant's "decision to go to trial, in and of itself, does not foreclose his eligibility for the reduction." *March*, 999 F.2d at 463. "However, situations in which a defendant can demonstrate acceptance of responsibility and still go to trial

23

will be," as Application Note 2 to § 3E1.1 indicates, "'rare.'" *Id*. (quoting U.S.S.G. § 3E1.1 cmt. n.2). According to Application Note 2, an example of such a rare situation is "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. § 3E1.1 cmt. n.2.

Hurst argues in his appeal that "the district court erred in ruling that . . . § 3E1.1(a) has a 'cutoff' point and is unavailable as a matter of law if the defendant takes his case to trial, regardless of whether the defendant previously pleaded guilty pursuant to an agreement before trial and, after the court rejected that plea, entered a second guilty plea before the jury reached a verdict." Aplt. Br. at 26. According to Hurst, he "was legally eligible for the two-point reduction" and "[t]he [district] court erred in ruling otherwise." *Id*.

The problem with these arguments is that the district court did not rule that § 3E1.1(a) has a "cutoff" point and is unavailable to any defendant who proceeds to trial. During the sentencing hearing on August 31, 2022, the district court questioned defense counsel about the requested § 3E1.1(a) reduction and, in doing so, asked: "does not the application of that credit hinge on the burden on the government in having to prepare for trial?" ROA, Vol. III at 352. Defense counsel responded that "one of these points has to do with the [government's] burden . . . of having to prepare for trial," and in turn conceded that Hurst "lost the opportunity to seek that third point." *Id*. at 352–53. Defense counsel argued, however, that "[t]he other two points . . . are . . . squarely focused on whether or not [the defendant] ultimately takes

24

responsibility." *Id*. at 353. Defense counsel argued that the only reason that Hurst proceeded to trial was because he was "s[eeking] just the assurance that he wasn't going to get nailed with something . . . like the max" sentence, but "[t]he government refused to provide any assurances with that regard." *Id*. Defense counsel further argued that "[w]e came to the close of the government's case and . . . [Hurst] didn't have a defense to put up and he said, Well, okay, I guess the thing to do now is to plead guilty." *Id*. at 354. In conclusion, defense counsel argued that "the verdict is what matters" and that Hurst was "entitled to those two points for taking responsibility prior to the verdict." *Id*. at 355.

Government counsel argued in response that they "st[oo]d primarily on [their written] motion." *Id*. at 356. In that pleading, which was actually a letter filed in response to the final PSR, the government argued that "[i]n rare occasions, a Defendant can proceed to trial and still receive the Acceptance of Responsibility reduction" but that this did not include defendants who contested material facts at trial. *Id*., Vol. II at 113. Government counsel also noted at the sentencing hearing that "throughout the trial [Hurst] availed himself of his right to cross-examine each and every witness, including the minor victim, who, we all know, was put through the trauma of having to come in and tell her story in front of strangers." *Id*., Vol. III at 357. In conclusion, government counsel argued that Hurst "stopping short of submitting a case to the jury and then pleading guilty, after the overwhelming evidence that was presented of guilt, [wa]s not true acceptance of responsibility." *Id*.

25

After hearing from both sides, the district court concluded "that the removal of those credits" for acceptance of responsibility "[wa]s appropriate in this instance . . . for the reasons that have been expressed and incorporated in the government's argument and brief, which the Court is adopting as its own here today." *Id*. at 360. Thus, in sum, the district court did not rule as a matter of law that any defendant who proceeds to trial is precluded from receiving a two-point reduction for acceptance of responsibility pursuant to § 3E1.1(a). Rather, the district court concluded that Hurst was not entitled to that reduction because he contested material facts at trial and only decided to plead guilty at the conclusion of all the government's evidence.

Hurst also argues in his appeal that "to the extent the court did not make a legal ruling and instead chose not to apply the credit, the court abused its discretion." Aplt. Br. at 27. Hurst argues in support that the two-point reduction "was appropriate because [he] repeatedly attempted to plead guilty pursuant to an agreement before trial, repeatedly gave a factual basis for his guilt, did not contest any element of the offense, and ultimately pleaded guilty before the jury began deliberations or reached a verdict." *Id*. "All of this," Hurst argues, "'clearly demonstrate[s] an acceptance of responsibility.'" *Id*. (quoting § 3E1.1, cmt. n.2). Hurst further argues "that the only reason [he] exercised his right to a jury trial was because the district court rejected the prior plea agreements and, after that, there was no plea offer available." *Id*.

The only Tenth Circuit case that Hurst points to in support of his arguments is *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999). In *Gauvin*, the district court granted the defendant a reduction for acceptance of responsibility pursuant to

26

§ 3E1.1(a) because the defendant "admitted to all the conduct with which he was charged" and "simply disputed whether his acknowledged factual state of mind met the legal criteria of intent to harm or cause apprehension." *Id*. at 806. The government filed a cross-appeal challenging the district court's grant of the offense-level reduction. This court affirmed, holding that the district court's decision "was not clearly erroneous." *Id*. In reaching that conclusion, this court stated that while it "might not have reached the same decision" as the district court, "the deference afforded the sentencing judge" compelled it to affirm. *Id*.

Although Hurst argues that *Gauvin* supports his position, we conclude that *Gauvin* is distinguishable for at least two reasons. First, unlike the defendant in *Gauvin*, Hurst did not, at least during the trial proceedings, admit to all the conduct with which he was charged. Instead, Hurst denied the conduct alleged by the government and, in turn, put the government to its burden of proof. Second, our post-*Gauvin* decisions "confirm that the main takeaway from *Gauvin* is not that a defendant is necessarily entitled to an offense level reduction under § 3E1.1 when they can present similar factual circumstances to that case, but that the deference we show sentencing courts will usually resolve such cases in favor of the district judge's conclusion." *United States v Nevarez*, 55 F.4th 1261, 1266 (10th Cir. 2022). In other words, given the same facts as were presented in *Gauvin*, we would likely affirm a district court's decision to either deny or grant the reduction. *Id*.

In our view, Hurst's case is more similar to *United States v. Wiggins*, 501 F. App'x 408 (6th Cir. 2012). In *Wiggins*, the defendant "attempted to plead guilty

27

pursuant to a plea agreement, but the district court rejected this plea at the initial sentencing hearing." *Id*. at 414. The defendant "proceeded to trial where he was convicted on two counts related to [a] conspiracy" to manufacture and distribute methamphetamine. *Id*. at 410. At sentencing, the district court denied the defendant's "request for a U.S.S.G. § 3E1.1 Acceptance-of-Responsibility Reduction." *Id*. at 414. The defendant appealed and argued that the district court's denial of his request was "a legal issue—[w]hat is required to constitute acceptance of responsibility—that [wa]s entitled to de novo review." *Id*. at 414–15 (internal quotation marks omitted). The Sixth Circuit rejected that argument, concluding that "it overlook[ed] the factual nature of the inquiry: whether he 'clearly demonstrate[d] his acceptance of responsibility for his offense.'" *Id*. at 415 (quoting U.S.S.G. § 3E1.1(a)). The Sixth Circuit in turn concluded that "[t]he district court did not err in refusing to give [the defendant] the Acceptance-of-Responsibility Reduction because his conduct did not clearly demonstrate his acceptance of responsibility for conspiring to manufacture and distribute methamphetamine." *Id*. The Sixth Circuit also noted "that even if the district court had accepted his guilty plea, he would not be entitled to the reduction as a matter of right." *Id*. Ultimately, "[g]iving deference to the sentencing judge," the Sixth Circuit "conclude[d] that the district court's determination that [defendant] did not clearly demonstrate acceptance of responsibility was not clearly erroneous." *Id*.

In the end, we conclude that the district court in this case did not clearly err in denying Hurst a two-level reduction pursuant to § 3E1.1(a). Although it is true that

28

Hurst entered into both an original and a revised plea agreement with the government, the district court rejected both of those agreements out of concern for the proposed sentence that was agreed upon by the parties. Thereafter, Hurst withdrew his guilty plea, proceeded to trial, forced the government to present all of its evidence against him, and did not admit to any of the conduct with which he was charged until the government had presented all of its evidence against him. Moreover, during the government's case-in-chief, Hurst cross-examined each government witness, including the minor victim. Thus, Hurst clearly disputed the government's case and his guilt of the charged offense. "Given this conduct," Hurst's "reasons for" proceeding to trial are "immaterial." *See United States v. Landron-Class*, 696 F.3d 62, 77 (1st Cir. 2012); *see also United States v. Samuels*, 521 F.3d 804, 817 (7th Cir. 2008) (concluding that district court did not err in denying § 3E1.1 reduction because defendant proceeded to trial and put the government to the burden of proving elements to which he had agreed at his attempted plea).

C

In his third issue on appeal, Hurst argues that "[t]he district court's imposition of the statutory maximum sentence of 180 months was substantively unreasonable." Aplt. Br. at 30. "'We review a district court's sentencing decision for substantive reasonableness under an abuse-of-discretion standard, looking at the totality of the circumstances.'" *Walker*, 74 F.4th at 1201 (quoting *United States v. Cookson*, 922 F.3d 1079, 1090 (10th Cir. 2019)). "'A district court abuses its sentencing discretion

only if the sentence exceeded the bounds of permissible choice.'" *Id*. (quoting

*United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018)). "'Applying this

standard, we give substantial deference to the district court and will only overturn a

sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable.'" *Id*.

(quoting *United States v. Peña*, 963 F.3d 1016, 1024 (10th Cir. 2020)). "We apply

this deference 'without regard to whether the district court impose[d] a sentence

within or outside the advisory guidelines range.'" *Id*. (quoting *Cookson*, 922 F.3d at

1090). "This substantial deference reflects that the 'sentencing judge is in a superior

position to find facts and judge their import under § 3553(a) in the individual case.'"

*Id*. at 1202 (quoting *Cookson*, 922 F.3d at 1091). All of this said, "we do 'not just

provide a rubber stamp of approval' and 'therefore must determine if the district

court's proffered rationale, on aggregate, justifies the magnitude of the sentence.'"

*Id*. (quoting *Peña*, 963 F.3d at 1024).

In this case, the district court offered the following explanation for the

sentence it imposed on Hurst:

> This Court is required to impose a sentence that is sufficient but
> not greater than necessary to comply with the purposes of sentencing
> identified at 18, U.S.C. Section 3553(a)(2).
>
> In determining a sentence to be imposed in this case, this Court
> has considered the aforementioned factors, statements, and submissions
> of the parties, the presentence investigation report, the nature and
> circumstances of the offense, and the history and characteristics of the
> defendant. And although advisory, the court has considered the
> guideline range for imprisonment as calculated under the United States
> Sentencing Guidelines.

30

Mr. Hurst, I firmly believe that as a society we are judged by what we do for the least among us, particularly the young, the elderly, and the vulnerable. And were this the standard by which you were being judged here today, the punishment of which you are deserving for your crime far exceeds even the statutory maximum, but that is not the standard. And, instead, this Court must impose a sentence that is sufficient but not greater than necessary, and then apply and weigh the various 3553(a) factors that were previously mentioned.

In so doing, I note that you are now 36 years old and stand before this Court convicted of sexual abuse in Indian country. At the age of 34, you raped a 13-year-old girl. You preyed on her through text messages, offered her drugs and alcohol, drove her to a remote location. You raped her in your vehicle, and then you lied about it. While these facts alone warrant a lengthy sentence, your criminal history provides greater support for this posture.

Unfortunately, this is not your first felony conviction. You have prior convictions consisting of drug and alcohol-related offenses, theft, and numerous assaults and/or domestic-related charges, many of which you received probation or a minimal term of imprisonment. Given the second and third chances of which you have been afforded, this Court is rather perplexed as to why you would be so callous and reckless with what should have been opportunities for growth, change, and rehabilitation. You have taken for granted the chances of which you have been afforded and repeatedly thumbed your nose at our system so as to lead this Court to conclude that you simply have no respect for law and that prior efforts to deter you from engaging in criminal activity were unsuccessful.

But in reviewing the PSR and all that I have been provided in preparation for today and having heard the arguments of counsel and listened to the evidence that was presented, I have also concluded that you have had your share of challenges, all of which I have considered, those being: The burden and realities of being a principal caregiver, the lack of employment history, and resulting economic instability, your history and struggles with drug and alcohol use and abuse, and your lack of education and educational opportunities. I have no doubt that these challenges contributed to many of the poor decisions that you made over the course of your life, which have led you to this moment.

While sympathetic to your plight and assigning an appropriate weight to those favorable factors, none of those, individually or

31

collectively, are so great as to outweigh the harm that you have caused and this Court's concern for the safety of the community.

As I prepared for and reflected on your crime, I have struggled and often ask myself [w]hat is worse, the act that you perpetrated or the resulting and lasting trauma to your victim, which will undoubtedly— trauma, I should say, that she will undoubtedly experience because of your perversion and predatory behavior?  And I go a step further and ask whether you will do it again if not deterred.

While the answers to those questions remain unclear, what is clear, again, is that you raped a 13-year-old girl, who though she may not qualify as a vulnerable victim for purposes of the two-level enchantment [sic], there is no doubt in my mind that you exploited those vulnerabilities.  You took advantage of this young girl, who was often home alone because she was being raised by a single father who spent great deal of time working.

What I also know, and that I find deeply troubling, is the age difference between you, a 34-year-old man, and your victim, a 13-year-old girl, at the time of this offense.

While 18 U.S.C., Section 2243(a) only requires that the victim be four years younger than the defendant, in this case it is a 21-year-age difference, which is simply unconscionable.

So for these reasons, this Court will exercise its prerogative and sentence you above the advisory guideline so as to ensure the safety of the community, to deter you from further engagement in criminal activity, and to reflect the seriousness of your offense, respect for the law, and, indeed, just punishment.

To that end, it is the judgment of this Court that the defendant, Garrett Joseph Hurst, is hereby committed to the custody of the bureau of prisons to the statutorily authorized maximum sentence of 180 months.

ROA, Vol. III at 374-379.

Hurst argues in his appeal that "[t]he record here . . . does not meaningfully

distinguish [him] from the 'run-of-the-mill' defendant convicted of the same or

similar offense." Aplt. Br. at 33. In support of this argument, Hurst points to three of our prior cases that he asserts are factually similar to or "more aggravated" than his case: *United States v. Tillman*, 504 F. App'x 729 (10th Cir. 2012), *United States v. Lonjose*, 663 F.3d 1292 (10th Cir. 2011), and *United States v. Waseta*, 647 F.3d 980 (10th Cir. 2011).

As we shall proceed to discuss, all three of these cases are factually distinguishable from Hurst's case. In *Tillman*, the defendant was convicted by a jury "of being an accessory after the fact to voluntary manslaughter and sexual abuse of a minor" step-cousin. 504 F. App'x at 732. At sentencing, the district court calculated Tillman's total offense level as 24, his criminal history category as one, and his advisory Guidelines sentencing range as fifty-one to sixty-three months. Nevertheless, the district court varied upward from the Guidelines range and imposed a sentence of eighty months.

Tillman filed a direct appeal arguing, in pertinent part, that the sentence imposed by the district court was substantively unreasonable. We rejected Tillman's argument. In doing so, we concluded that "the district court provided a reasoned explanation for why it viewed the guidelines sentence as inadequate punishment for . . . Tillman." *Id*. at 734. Specifically, the district court noted that "Tillman . . . got" the minor victim "drunk . . . and then took advantage of her." *Id*. (internal quotation marks and brackets omitted). The district court also noted that Tillman's "act was the event that triggered the anger" of the victim's "22-year-old brother," who responded by choking and killing the victim. *Id*. (internal quotation marks omitted).

33

Lastly, the district court "referred to U.S.S.G. § 2A3.2, comment 6, because Mr. Tillman, in having sex with his 13-year-old step-cousin, was a participant in and perhaps a precipitating fact in the death of a family member through his criminal conduct." *Id*. (internal quotation marks omitted).  Given these rationales, we concluded that the sentence imposed by the district court was not arbitrary, capricious, whimsical, or manifestly unreasonable.  *Id*.

In our view, the defendant's criminal conduct and history in *Tillman* is distinguishable from Hurst's criminal conduct and history.  For example, the defendant in *Tillman* was only eighteen years old at the time of the offense of conviction, and there was only a five-year difference between him and the victim.  In contrast, Hurst was thirty-four years old at the time of the offense of conviction and there was a twenty-one year age difference between him and the victim.  Further, the defendant in *Tillman* had a criminal history category of I.  In contrast, Hurst had a criminal history category of VI.  And it was Hurst's extensive criminal history that played a significant role in the district court's decision to vary upward from the guidelines sentencing range.  Thus, in sum, *Tillman* is clearly distinguishable from Hurst's case.

The next case cited by Hurst, *United States v. Lonjose*, involved a 22-year-old defendant who "engaged in a sexual relationship for approximately two months with a girl between the ages of 12 and 16."  663 F.3d at 1295.  "The girl told FBI agents that she had consented to the sexual encounters, but that she let Defendant have sex with her so that they could remain friends."  *Id*. (internal quotation marks and

34

brackets omitted). "Defendant admitted to having sex with the girl four times, but stated that he believed she was at least 17 years old, although she had never told him her age." *Id*. The defendant was indicted on four counts of sexual abuse of a minor in Indian Country, but ultimately pleaded guilty to one count in exchange for the government's agreement to dismiss the remaining three counts. At sentencing, the district court calculated the defendant's total offense level as 24, his criminal history score as zero, his criminal history category as I, and a guideline imprisonment range of 51 to 63 months. The district court sentenced the defendant to 51 months in prison and a three-year term of supervised release.

*Lonjose* is distinguishable from Hurst's case for a number of reasons. First, the eight-year age difference between the defendant and victim in *Lonjose* was substantially less than the twenty-one year age difference between Hurst and his victim. Second, the defendant in *Lonjose* did not engage in forcible sexual contact with the victim against her will, as did Hurst in this case. Third, the defendant in *Lonjose* had no criminal history at all. Here, in contrast, Hurst has an extensive criminal history, and, as we have noted, that history was one of the key factors that prompted the district court to impose an above-guideline-range sentence.

The third and final Tenth Circuit case cited by Hurst, *United States v. Waseta*, involved a defendant who pleaded guilty to sexual abuse of a minor or ward in Indian Country arising out of sexual misconduct with his minor stepson. 647 F.3d at 981. Although the specific offense of conviction allegedly occurred during a two-month period in the summer of 1989, the presentence investigation report revealed that the

35

defendant had sexually abused his stepson on a regular basis from the time he was six years old until he was approximately seventeen years old. At sentencing, the district court calculated the defendant's total offense level as 14, his criminal history score as zero, his criminal history category as I, and his guideline imprisonment range as 15 to 21 months. *United States v. Waseta*, No. 10-2097, ROA, Vol. II at 12–13, 28 (10th Cir. 2010). The district court, after considering the § 3553 factors (which included the defendant's own history of being sexually abused as a minor), concluded that the nature and characteristics of the offense demanded an upward variance from the guideline range. *Id.*, Vol. III at 38–52. Ultimately, the district court sentenced the defendant to a term of imprisonment of 46 months (the statutory maximum sentence was 60 months).

Comparing Hurst's case to *Waseta*, the relevant offense conduct in *Waseta* was arguably more egregious than the relevant offense conduct in Hurst's case. Specifically, the relevant offense conduct in *Waseta*, as noted, included continuing sexual abuse of the defendant's minor stepson over a period of approximately eleven years. That said, because the defendant in *Waseta* pleaded guilty only to one act of sexual misconduct, that resulted in a lower total offense level than in Hurst's case. The other reason that the guideline imprisonment range, and in turn the actual sentence, was lower in *Waseta* than in Hurst's case was because the defendant in *Waseta* had no criminal history at all, and thus his criminal history category was I. In contrast, Hurst has an extensive and violent criminal history, and his criminal history

36

category is VI.  As noted, it was this criminal history that in large part drove the district court to impose a sentence above the guideline imprisonment range.

Aside from these three Tenth Circuit cases, Hurst also cites to eleven cases from other circuits, most of which are unpublished.  *See* Aplt. Br. at 33–35. Although Hurst asserts that the sentences imposed in these cases "confirm that [his] sentence is exceptionally and unreasonably long," he fails to offer key details about these cases.  *Id*. at 35.  Specifically, Hurst provides only a brief parenthetical describing the offense of conviction in each case but otherwise fails to discuss the underlying facts of the crimes or to provide the total offense level or criminal history of any of the defendants in these cases.  Without that information, there is simply no basis for us to conclude that Hurst's sentence is, in comparison, unreasonably long.

Lastly, Hurst argues that "the facts of [his] case are a far cry from the facts of another" Tenth Circuit "case in which the defendant also received a 180-month sentence," i.e., *United States v. Ortner*, No. 21-5075, 2023 WL 382932 (10th Cir. Jan. 25, 2023).  Aplt. Br. at 36.  In 2016, the defendant in *Ortner*, who was then 53 years old, met S.W., who was then 14 years old.  *Ortner*, 2023 WL 382932 at *1. Over the course of the next two years, the defendant began spending time with S.W. and her family, and the defendant and S.W. participated in tribal powwows and performed traditional dances.  In early 2018, the defendant traveled from Wyandotte, Oklahoma, to Joplin, Missouri, on a work-related trip and took S.W. with him.  The defendant had sex with S.W. for the first time on this trip.  According to S.W., she

37

and the defendant thereafter had "multiple sexual encounters . . . in various locations including [the defendant's] home and car." *Id*. at *2.

The defendant in *Ortner* was convicted by a jury, in relevant part, of transportation of a minor with intent to engage in criminal sexual activity (Count 1), sexual abuse of a child in Indian country (Count 2), and abusive sexual contact in Indian Country (Count 3).  The district court calculated a total offense level of 39, a criminal history score of zero,[3] a criminal history category of I, and a guideline imprisonment range of 262 to 327 months as to Count 1.  *United States v. Ortner*, No. 21-5075, ROA, Vol. II, PSR at 9–10, 12 (10th Cir. 2022).  As to Counts 2 and 3, the statutorily authorized maximum sentences were less than the minimum of the applicable guideline ranges.  Thus, the advisory guideline range was 180 months as to Count 2 and 24 months as to Count 3.  *Id*. at 12.  The district court ultimately sentenced the defendant "to concurrent terms of life as to Count 1; 180 months as to Count 2; [and] 24 months as to Count 3."  *Ortner*, 2023 WL 382932 at *1.

The criminal conduct at issue in *Ortner* appears to us to have been more egregious than the criminal conduct committed by Hurst in this case.  Specifically, the defendant in *Ortner*, who was nearly forty years older than the victim, transported the victim across state lines in order to have sex with her for the first time, and thereafter coerced her to have sex on multiple other occasions after they returned to

---

[3] Notably, even though the defendant's criminal history score was zero, the presentence investigation report noted that he had a 2018 Oklahoma state conviction for second-degree rape.  *United States v. Ortner*, No. 21-5075, ROA, Vol. II, PSR at 9 (10th Cir. 2022).

their home state.  But, importantly, the defendant in *Ortner* received a significantly more severe sentence than did Hurst.  Thus, Hurst is simply wrong in suggesting that the sentence imposed in *Ortner* establishes that his sentence is substantively unreasonable.

Hurst also argues in his appeal that "the record does not contain any support for the conclusion that the facts of [his] case are materially different from the facts of the 'run-of-the-mill' case."  Aplt. Br. at 37.  In particular, Hurst asserts that he "has no criminal history of sex offenses," and he in turn argues that the district court "gave too much weight to [his] prior offenses, which were nothing like the offense in this case."  *Id*.

In actuality, however, the facts of Hurst's case and his criminal history are anything but "run-of-the-mill."  To begin with, the age difference between Hurst and his victim, which the district court cited as one of the reasons for imposing an above-guidelines sentence, was not "run-of-the-mill."  In comparison, the defendants in all but one of the other Tenth Circuit cases cited by Hurst were much closer in age to their victims than was Hurst.  The only Tenth Circuit case cited by Hurst that involved a greater age difference was *Ortner*, and the defendant in that case was sentenced to life in prison.

Further, Hurst's criminal history was far from "run-of-the-mill."  Indeed, Hurst's criminal history was lengthy, relatively continuous throughout his adult years, and frequently involved violence perpetrated against female victims.  Further, some of Hurst's criminal offenses either presented a danger to the public or exhibited

39

a disregard for law enforcement. As the district court aptly noted in sentencing Hurst, his criminal history clearly established that he had no respect for the law and that the prior efforts by law enforcement and the state courts to deter him from engaging in criminal activity were unsuccessful.

In his final argument, Hurst asserts that "there was no record support for the court's speculation that" he "had committed or would commit other offenses if not sentenced to 15 years in prison." Aplt. Br. at 37. Hurst argues in support that "[t]he court's reliance on the dash cam and the women's underwear for a contrary conclusion was improper (and clearly erroneous) because [his] dad offered an uncontradicted and credible explanation for both items of evidence." *Id.*

We reject these arguments. The district court, in announcing its sentence, said nothing about Hurst having possibly committed prior acts of sexual violence. Thus, Hurst's references to the "dash cam and the women's underwear" are irrelevant on that score. The district court did, however, express concern about Hurst committing future acts of sexual violence upon release from prison. Specifically, the district court stated it had asked itself "whether you will do it again," i.e., commit a similar act of sexual violence, "if not deterred." ROA, Vol. III at 378. But, importantly, the district court then immediately stated that "the answers to those questions remain unclear," and it instead focused on the specific facts of Hurst's offense of conviction. *Id.* Thus, the district court did not base its sentence on any speculation that Hurst would commit future acts of sexual violence.

40

In sum, we conclude that the evidence contained in the record on appeal amply supports the district court's decision to impose an above-guidelines sentence, and in turn plainly refutes Hurst's assertion that the sentence imposed by the district court was substantively unreasonable.

### D

In his fourth and final issue on appeal, Hurst argues that the district court procedurally erred by failing to explain why a thirteen-year period of supervised release was appropriate.  Because Hurst did not raise this issue below, we review it only for plain error.  *See United States v. Nunez-Carranza*, 83 F.4th 1213, 1218 (10th Cir. 2023) ("We review Nunez-Carranza's sentencing challenge for plain error because he did not ask the district court, at sentencing, for a more detailed explanation as to why the court rejected his request for a downward variance.").  "To obtain relief," Hurst must, therefore, "'establish 1) error 2) that was plain, and 3) that affected his substantial rights.'"  *Id.* at 1218 (quoting *United States v. Leib*, 57 F.4th 1122, 1128 (10th Cir. 2023)).  If Hurst can make these showings, "this court then would have discretion to grant relief if the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings."  *Id.* (quoting *Leib*, 57 F.4th at 1128) (internal quotation marks and brackets omitted).

It is undisputed that "[a] district court must explain its reasons for imposing a sentence."  *United States v. Martinez-Barragan*, 545 F.3d 894, 902–03 (10th Cir. 2008).  That obligation "stems from 18 U.S.C. § 3553(c), which requires that '[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition

41

of the particular sentence.'" *United States v. Zanghi*, 209 F.3d 1201, 1204–05 (10th Cir. 2000) (quoting 18 U.S.C. § 3553(c) and remanding to provide reasons for imposition of supervised release after review of a preserved error).

In this case, the district court offered no explanation on the record at the time of sentencing for why it selected a thirteen-year term of supervised release. To be sure, the district court's announcement of the thirteen-year term of supervised release was immediately preceded by the district court's detailed explanation for why it selected the 180-month term of imprisonment. But we have held that "[i]t is not appropriate simply to assume that the sentencing court's reason for imposing a prison term likewise extends to its decision[] regarding supervised release." *Id*. at 1205. Given the plain statutory obligation outlined in § 3553(c), we have no choice but to conclude that the district court plainly erred in failing to announce its reasons for selecting the thirteen-year term of supervised release.

Hurst must still, however, establish that the district court's error affected his substantial rights. In this context, that means that Hurst must demonstrate that there is a reasonable probability that, but for the error, the district court would have imposed a lesser term of supervised release. *See United States v. Farley*, 36 F.4th 1245, 1253 (10th Cir. 2022). In attempting to make this showing, Hurst concedes that "[u]nder 18 U.S.C. § 3583(k), the district court was required to sentence [him] to a minimum term of 5 years of supervised release and up to life."[4] Aplt. Br. at 39.

---

[4] Section 3583(k) states, in relevant part, that "the authorized term of supervised release for any offense under section 1201 involving a minor victim, and

42

Hurst also concedes that U.S.S.G. § 5D1.2(b)(2) "include[s] a 'policy statement'
providing that '[i]f the instant offense of conviction is a sex offense, . . . the statutory
maximum term of supervised release is recommended.'" *Id*. (quoting U.S.S.G.
§ 5D1.2(b)(2), Policy Statement).  Nevertheless, Hurst argues that "there is ample
reason to think the error was prejudicial" because, "[g]iven the wide range available
to the court when selecting a term of supervised release," it is "probable to think the
court would select a different term of supervised release if required to explain the
basis of its decision." *Id*. at 40–41.

We are not persuaded.  The record in this case is replete with statements on the
record from the district court expressing concern about the nature of the offense of
conviction, Hurst's lengthy and violent criminal history, and the possibility of Hurst
committing future criminal acts upon release from imprisonment.  At the same time,
there is literally nothing in the record that could reasonably lead us to conclude that
the district court, if required to offer a specific explanation for the term of supervised
release, would choose a lower term.  Indeed, given the concerns expressed by the
district court on the record and the policy statement contained in U.S.S.G.
§ 5D1.2(b)(2), it is instead reasonable to think that the district court might impose the
statutory maximum term of supervised release, i.e., life.  We therefore conclude that

---

for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250,
2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years
not less than 5, or life."  18 U.S.C. § 3583(k).

Hurst has failed to establish that the district court's error affected his substantial rights.[5]

## IV

The judgment of the district court is AFFIRMED.

---

[5] Because the district court imposed a term of supervised release that was lower than that recommended in U.S.S.G. § 5D1.2(b)(2)'s policy statement, it is also difficult, if not impossible, to conclude that any error on the part of the district court in failing to specifically explain the reasons for doing so seriously affected the fairness, integrity, or public reputation of judicial proceedings.