**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

KYEREN TILLMAN,

     Defendant-Appellant.

No. 11-8018
(D.C. No. 2:10-CR-00115-ABJ-2)
(D. Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **SEYMOUR** and **MURPHY,** Circuit Judges.

---

     Kyeren Tillman was convicted of being an accessory after the fact to

voluntary manslaughter in violation of 18 U.S.C. §§ 3 and 1153, and with

engaging in sexual abuse of a minor in violation of 18 U.S.C. §§ 2243(a).  He

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

appeals the court's rejection of his guilty plea as well as the court's decision to sentence him above the guidelines. We affirm.

Mr. Tillman was initially charged with being an accessory to second degree murder and to the sex abuse crime. He entered into a plea agreement pursuant to which he agreed to plead guilty to being an accessory after the fact to voluntary manslaughter, the government agreed to dismiss the other charges, and both parties stipulated to a sentence of seventy months.

After hearing from Mr. Tillman at a change of plea hearing, the district court concluded the plea lacked a sufficient factual basis and rejected it. The court's conclusion was based in part on the following exchange:

> THE COURT: Will you be pleading guilty because you are, in fact, guilty?
>
> [MR. TILLMAN]: No, Your Honor, I just pleaded guilty because I know I probably will lose trial.
>
> THE COURT: So you think you're innocent of this?
>
> [MR. TILLMAN]: Um, pretty much, yeah, yes, I am, Your Honor.
>
> THE COURT: Well, I would never make you plead guilty if you're innocent. You're entitled to have a jury trial and let 12 citizens decide this case and hear the evidence against you at that trial, whatever the Government's evidence might be.
>
> Do you know what the Government's evidence would be? . . .
>
> [MR. TILLMAN]: Yes, Your Honor. Yeah, they told us about the evidence.

THE COURT: All right.  Is that evidence true? . . .

[MR. TILLMAN]: Yeah, 'cause I, like I, um – how you say it? I agree with some of it, but some of it I don't, I don't, uh, agree with it.

THE COURT: All right.  I think I'll need to ask some more questions.

Rec., vol. III at 41-42.

The court spoke to Mr. Tillman in greater detail about the terms and consequences of the plea agreement, the elements of the alleged offense, and the rights and procedures he would give up by pleading guilty.  When Mr. Tillman then asserted that he did, in fact, want to plead guilty, the court asked the government to present the factual basis for the plea agreement.  The government explained that if the case were tried the evidence would establish the following, based principally on the testimony of FBI agents who had spoken with Mr. Tillman and Mr. Robert Spoonhunter.  On the evening of April 2, 2010, Mr. Tillman, who was then eighteen years old, was drinking at his step-father's house with Mr. Spoonhunter and Mr. Spoonhunter's thirteen-year-old sister, who were Mr. Tillman's step-cousins.  At some point, Mr. Tillman and Mr. Spoonhunter's sister began having sex in the back room.  Soon thereafter, Mr. Spoonhunter entered the room, pulled Mr. Tillman away from his sister, and threw Mr. Tillman out of the room.  When Mr. Tillman returned, he saw Mr. Spoonhunter holding his sister in a choke hold.  Her body went limp, and when Mr. Spoonhunter released

her she hit her head on a weight bench.  Regarding what happened next, the government explained:

> [THE GOVERNMENT]:  According to Mr. Tillman, there was a foul smell.  [Mr. Spoonhunter's sister] had lost her bowels.  So they cleaned her up . . .  Mr. Tillman went outside and found a rope.  By this time, according to Mr. Tillman, Mr. Spoonhunter had dragged [his sister's] body to the front of the trailer house.  Mr. Spoonhunter claims Mr. Tillman did that, but Mr. Tillman claims that he went outside, got a rope, came back inside, gave it to Mr. Spoonhunter, who tied it around [his sister's] legs, and the two of the men proceeded to take her body, naked from the waist down, and left it under a tree in the yard.
>
> Mr. Tillman then took [her] clothes and took them to next door where he said he lived . . . and put them in a burn barrel.  During this whole time Mr. Tillman or at some point during this time, Your Honor, Mr. Tillman and Mr. Spoonhunter obtained a pair of gloves and wore gloves that they also got rid of.
>
> During this time both Mr. Spoonhunter and Mr. Tillman are extremely intoxicated, spoke with one another, and they agreed that they were not going to tell anybody, that they would keep secret.  Each of them told the other that if you don't tell anybody, essentially, I won't tell anybody.

*Id.* at 54-55.

The court asked Mr. Tillman if he agreed with this statement of facts.  Mr. Tillman explained that he disagreed with many of the facts presented by the government.  He admitted to disposing of the victim's clothes, but denied getting the rope, moving the body, or even seeing Mr. Spoonhunter move the body outside.  In response, the court stated:

> THE COURT: I think we have a problem.  I'm not going to accept a plea unless you are convinced that you are guilty of this

-4-

crime, and it sounds to me like you have some real concerns about whether or not you are guilty. And you'll need to hear that evidence in front of a jury and let them decide . . .

THE COURT: As long as there is a question in your mind as to whether or not you violated the law and aided and . . . assisted as an accessory after the fact of [Mr. Spoonhunter] having choked the victim to death and the disposition of her body and evidence of that crime, I think the Government would have to prove its case against you.

*Id.* at 57-58.

Nevertheless, after a short recess, the district court offered Mr. Tillman another opportunity to provide facts that could serve as a factual basis for a guilty plea. Mr. Tillman told the court he saw Mr. Spoonhunter kill the victim. He also modified his earlier account, explaining that while he did not move the body himself, he did direct Mr. Spoonhunter to move the body to a tree outside the residence. He also admitted putting a blanket over the body once it was outside. However, Mr. Tillman told the court that he didn't know why they engaged in these activities and denied that they discussed keeping their activities a secret. Then he clarified that they moved the body because he "didn't want it in the house to make it stink." *Id.* at 66. In response to these comments, the court stated:

THE COURT: The last elements [regarding acting knowingly to hinder or prevent apprehension] really bother me in this. I don't see anything here that this was done to prevent the offender, Robert Spoonhunter's apprehension or punishment.

*Id.* at 67.

Immediately following this statement, and in response to questioning by his attorney, Mr. Tillman suggested he and Mr. Spoonhunter did, in fact, move the body and hide the clothing in order to prevent Mr. Spoonhunter's apprehension:

> [MR. TILLMAN'S ATTORNEY]: . . . [W]as one of the reasons why you hid the clothing and moved the body so that neither you or Robert [Spoonhunter] would get caught or get accused of this crime?
>
> [MR. TILLMAN]: Yeah.
>
> [MR. TILLMAN'S ATTORNEY]: Did you talk to [Mr. Spoonhunter] about that? . . . .
>
> [MR. TILLMAN]: Um, yeah. Talked to him because like he didn't want to go to jail, and I don't want to go to jail either.

*Id*. at 67-68. But then he equivocated again. When the court asked why he told Mr. Spoonhunter to move the body outside, Mr. Tillman replied:

> [MR. TILLMAN]: I don't know, Your Honor. I was drunk, and I was frightened.
>
> THE COURT: Nevertheless, you say you and Spoonhunter didn't talk with one another.
>
> [MR. TILLMAN]: Not after the incident.
>
> THE COURT: I just don't think it's there.

*Id*. at 71.

The district court rejected the guilty plea, concluding there was an insufficient factual basis supporting it. After a superseding indictment and a jury trial, Mr. Tillman was convicted of being an accessory after the fact to voluntary

-6-

manslaughter and sexual abuse of a minor.  Although Mr. Tillman's advisory guidelines range for sentencing was 51 to 63 months of imprisonment, the district court imposed a sentence of 80 months.

Mr. Tillman first contends it was error for the court to reject his guilty plea for lack of a factual basis.  A criminal defendant has no right to have a guilty plea accepted in the absence of a factual basis.  *United States v. Martin*, 528 F.3d 746, 750 (10th Cir. 2008).  Where, as here, a defendant fails to object when the district court rejects his guilty plea, we review the court's action for plain error.  Fed R. Crim. P. 52(b); *U.S. v. Buonocore*, 416 F.3d 1124, 1128-29 (10th Cir. 2005).  Under the plain error standard, we may reverse only if the district court committed "(1) [an] error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Buonocore*, 416 F.3d at 1129.  The defendant bears the burden of establishing all four of those elements.  *United States v. Hall*, 625 F.3d 673, 684 (10th Cir. 2010).

Mr.Tillman has not demonstrated that the district court committed any error at all. A court is required to reject a guilty plea unless it is knowing, voluntary, and contains a factual basis.  Fed. R. Crim. P. (11)(b); *see United States v. Landeros-Lopez*, 615 F.3d 1260, 1262-3 (10th Cir. 2010).  To accept Mr. Tillman's plea to the crime of accessory after the fact to voluntary manslaughter, the district court had to determine that a factual basis existed for every element of

the crime, defined at 18 U.S.C. §§ 3 (accessory after the fact) and § 1153

(manslaughter in Indian country). Section 3 provides:

> Accessory after the fact. Whoever, knowing that an offense against the United States has been committed, relieves, comforts, or assists the offender *in order to* hinder or prevent his apprehension, trial, or punishment, is an accessory after the fact. (emphasis added).

18 U.S.C. § 3. The court sought, but did not receive, satisfactory answers from

Mr. Tillman to establish a factual basis for the accessory-after-the-fact charge.

First, Mr. Tillman initially stated he was not guilty. He said he was only

pleading guilty because he knew he would lose at trial and that he only agreed

with "some" of the government's evidence. Second, even after clarifying he did

want to plead guilty, Mr. Tillman disputed many of the facts set forth by the

government. He denied getting the rope, moving the body, or even seeing Mr.

Spoonhunter move the body outside.

Then Mr. Tillman changed his story and told the court that he had, in fact,

directed Mr. Spoonhunter to move the victim's body outside and that he had also

placed a blanket over the body, but he equivocated about his purpose in doing

those things. At one point, in response to a question by his attorney, he suggested

he was hoping to prevent Mr. Spoonhunter's and his own apprehension. At other

points, however, he told the court (1) that he didn't know why they engaged in

these activities and they did not talk about keeping it a secret, and (2) that they

moved the body because he "didn't want [it] in the house to make it stink." Rec.,

-8-

vol. 3 at 66. This equivocation about motive led the court to conclude, with respect to the factual basis for the plea, "I just don't think it's there." *Id.* at 71.

Given this record, we are not persuaded the district court erred in determining that no factual basis existed for the plea. *See, e.g.*, *United States v. Moran*, 452 F.3d 1167, 1172 (10th Cir. 2006) (no clear error in rejecting guilty plea after plea was entered but before sentencing, where court learned defendant made statements to drug counselor contradicting factual basis defendant previously described to the court); *United States v. Young*, 45 F.3d 1405, 1412-13 (10th Cir. 1995) (district court did not abuse its discretion in rejecting guilty plea based on its concern that defendant had not admitted to having the knowledge and intent required for the charged money laundering offense).

Mr. Tillman also appeals the reasonableness of the district court's upward variance in his sentence. "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (internal quotation marks omitted). Because Mr. Tillman does not contend the district court committed any procedural errors, we consider whether the sentence was substantively unreasonable. In doing so, we assess broadly whether the court abused its discretion in "weighing permissible § 3553(a) factors in light of the totality of the circumstances." *Sayad*, 589 F.3d at 1118. Where a sentence is outside the advisory guideline range, we "may consider the extent of the deviation, while giving deference to the district court's decision

that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

In this case, the district court provided a reasoned explanation for why it viewed the guidelines sentence as inadequate punishment for Mr. Tillman. It explained that Mr. Tillman "[g]ot [Mr. Spoonhunter's 13-year old sister] drunk . . . and then took advantage of her," emphasizing this act "was the event that triggered the anger that the 22-year-old brother directed to her as he choked her, choked the life out of her and threw her against the weight bench, taking her life." Rec., vol. 3 at 462. The court also referred to U.S.S.G. § 2A3.2, comment 6, because Mr. Tillman, in having sex with his 13-year old step-cousin, "was a participant in and perhaps a precipitating fact in the death of a family member through his criminal conduct"). *Id.* at 463, 465. While we concede Mr. Tillman's tumultuous upbringing, troubled family life, and limited intellectual capacity might have militated against an upward variance, as argued by Mr. Tillman, we cannot say the district court's sentence was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Sayad*, 589 F.3d at 1116. Accordingly, the court did not abuse its discretion in imposing a variant sentence of 80 months.

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge