FILED
**United States Court of Appeals**
**Tenth Circuit**

PUBLISH

**March 26, 2025**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 23-8056

SALVADOR NOLASCO ROMERO,

    Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:22-CR-00120-ABJ-1)**

_____

Jacob R. Rasch-Chabot, Assistant Federal Public Defender, Office of the Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant–Appellant.

Margaret M. Vierbuchen, Assistant U.S. Attorney, Office of the United States Attorney (Eric J. Heimann, United States Attorney, with her on the brief), Cheyenne, Wyoming, for Plaintiff–Appellee.

_____

Before **HARTZ**, **EBEL**, and **ROSSMAN**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Salvador Nolasco Romero (Defendant) was indicted on charges of conspiring to distribute methamphetamine and possessing methamphetamine with intent to distribute.

He reached an agreement with the government to plead guilty to the conspiracy charge in return for dismissal of the distribution charge. At the change-of-plea hearing he said that he was only partially guilty and repeatedly stated that he joined the conspiracy only under duress. The district court rejected the guilty plea. Defendant proceeded to trial and was convicted on both charges. On appeal he challenges the district court's rejection of his guilty plea. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

A grand jury in the United States District Court for the District of Wyoming indicted Defendant for conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, and possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841. Defendant initially pleaded not guilty to both counts. Two weeks before trial was set to begin, however, the parties reached a plea agreement under which Defendant promised to plead guilty to the conspiracy charge.

The district court held a two-hour change-of-plea hearing. The district court asked Defendant, "Are you pleading guilty because you are, in fact, guilty?" R., Vol. I at 71. Defendant responded, "In part, yes, I am guilty." *Id.*

The district court then asked the parties to provide the factual basis for the plea. In response to questions from defense counsel, Defendant stated that he rented a car for a woman named Bianca Ortega, communicated with her while she drove from Nevada to Minnesota, knew methamphetamine was in her vehicle, and knew that she passed through Wyoming on her trip.

The government asked follow-up questions. Defendant started to shift his story.

2

He now explained that, "under threat," he picked up a bag in California from people he referred to as "agents." *Id.* at 74–75. These agents said they had his sister-in-law's daughter in their custody and threatened to harm her if Defendant did not give the bag to Ms. Ortega. Afraid, Defendant complied. He drove the bag from California to Nevada and gave it to Ms. Ortega. He maintained, however, that he never looked in the bag.

The district court said that it "sounds [to the court] like there's a defense that's being asserted in this case of compelled violation of the law," *id.* at 76, and it announced that it would not accept the plea. It explained that Defendant's testimony suggested that he was "forced" to help Ms. Ortega "under threat" and, as a result, his participation in the conspiracy was "not a voluntary situation." *Id.* The court said it did not "want to force" Defendant to plead guilty when his testimony suggested he was "innocent." *Id.* Defense counsel asked for a recess to speak with his client.

After the recess, defense counsel shared a "little background" about how the current case "unfolded." *Id.* at 78. He said that the cartel had coerced Defendant into transporting money "against his will." *Id.* at 79. The government knew of this activity, he said, but Defendant had "not been indicted because there[] [were] obvious severe problems and fundamental issues with the—such—such counts." *Id.* At some point, Defendant "reached out" to the same cartel to help him get his sister-in-law's daughter into the United States. *Id.* at 80. The cartel agreed to help Defendant if he first "transport[ed] a bag from California." *Id.*

Defense counsel then said that there was "one issue" before the court. *Id.* at 81. He explained:

3

[Defendant] understands that if he is going to say that he was forced to do this—which is his right; he has the ability to do that or he can say that he did this willingly and knowingly and it was a favor—that one path leads to the plea agreement and the Court potentially accepting the plea and the other path leads to trial and potentially a much harsher sentence.

*Id.* at 82. Counsel continued:

I believe there are two elements remaining: The elements is [sic], did [Defendant] freely and knowingly enter this? Did he do this on his own will? Or was he forced to do it—not on all the other times that he was forced to do it but this time specifically and only this time. And, also, at any point did he know that this was methamphetamine?

*Id.* at 83. He then offered to question Defendant again, pointing out that Defendant "needs to know that one answer results in trial, one answer results in a potential plea and taking the benefits of the plea, which is limited in this case but they're still benefits." *Id.*

After further discussion among the attorneys and the district court, the court questioned Defendant directly. Defendant now stated that he previously transported money for members of a Mexican cartel. He asked them to help him smuggle his sister-in-law's daughter into the United States. The cartel promised to help Defendant if he first "handled" a drug transaction in the United States. *Id.* at 89. So Defendant travelled to California, picked up a laundry bag containing drugs, delivered it to Ms. Ortega, rented a car for her, instructed her to show up at an address in Minnesota, and gave her credit cards to use during her trip. Members of the cartel continually issued threats after he agreed to pick up the drugs.

The district court again rejected the guilty plea. It explained that it could not "accept the plea with the idea that [Defendant was] compelled to commit the crime

4

by these bad people under threat to a family member." *Id.* at 97.

Several months later the government offered a second (less attractive) plea agreement to Defendant, but he rejected it. Around the same time, the government moved in limine to preclude Defendant from raising a duress defense at trial. The district court granted this motion because Defendant failed to show that (1) he faced imminent and impending threats against himself or his family; (2) he did not recklessly or negligently place himself in a situation in which it would be probable that he would be forced to choose criminal conduct; (3) no reasonable legal alternative existed to help his family member migrate to the United States; and (4) a causal relationship existed between participating in the drug conspiracy and avoiding harm.

After a four-day trial a jury convicted Defendant of both conspiracy and possession with intent to distribute. The district court sentenced Defendant to 188 months' imprisonment followed by five years' supervised release.

## II.    DISCUSSION

Defendant raises two arguments against the rejection of his guilty plea. First, he argues that his plea colloquy provided a sufficient factual basis to support his guilty plea and failed to establish a duress defense. Second, he argues that even if he had established a duress defense, the district court failed to recognize its discretion to accept guilty pleas accompanied by affirmative defenses, and that it should have accepted his guilty plea. For its part the government argues that Defendant waived and forfeited any claim of error and that the district court did not abuse its discretion in rejecting the plea.

We accept Defendant's uncontested assertion that there was a sufficient factual

basis for his guilty plea. But, on plain-error review, we reject his claim that the district court erred in rejecting his plea. We therefore need not address the government's waiver arguments.

Before turning to Defendant's arguments, we address two preliminary matters: (1) the relationship between a duress defense and the elements of conspiracy and (2) the discretion of the district court in deciding whether to accept a guilty plea.

### A.    The Duress Defense and Elements of the Charged Offense

A court cannot "enter judgment on a guilty plea [without first] determin[ing] that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[T]o determine whether a factual basis exists for the defendant's plea, the district court must compare the conduct admitted or conceded with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime." *United States v. Kearn*, 90 F.4th 1301, 1307 (10th Cir. 2024) (ellipsis and internal quotation marks omitted).

Drug conspiracy under 21 U.S.C. § 846 has four elements: (1) the defendant and another person must agree to distribute a controlled substance; (2) the defendant must know the essential objectives of the conspiracy and share a common purpose or design with his fellow conspirators; (3) the defendant must knowingly and voluntarily participate in the conspiracy; and (4) the defendant must, through his activities, facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole (that is, interdependence must exist among the alleged coconspirators). *See United States v. Cushing*, 10 F.4th 1055, 1065–66 (10th Cir. 2021).

Defendant's plea colloquy appears to satisfy these elements. He testified that in

6

late March or early April 2022 he reached out to Mexican cartel members and asked them to help smuggle his sister-in-law's daughter into the United States. The cartel members said they would help him if he first "handled [a] drug transaction in the United States." R., Vol. I at 89. Defendant knew that the cartel members had a history of distributing drugs. He then picked up a laundry bag containing 12 pounds of methamphetamine in California, drove it to Nevada, delivered it to Ms. Ortega, rented a car for her, instructed her to show up at an address in Minnesota, and gave her credit cards to use during her trip. We assume that these statements provide a sufficient factual basis to support a guilty plea for drug conspiracy.

The fact that Defendant maintained throughout his plea colloquy that he acted only under duress does not necessarily change this conclusion. This follows from the nature of duress as an "affirmative defense." *United States v. Dixon*, 901 F.3d 1170, 1176 (10th Cir. 2018). Traditionally, duress "excuse[s] criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury" and the "threat caused the actor to engage in conduct violating the literal terms of the criminal law." *United States v. Bailey*, 444 U.S. 394, 409 (1980). To prove duress the defendant must show: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." *United States v. Arias-Quijada*, 926 F.3d 1257, 1260 (10th Cir. 2019) (internal quotation marks omitted). These elements are ordinarily distinct from the elements of the offense itself. *See Dixon v. United States*, 548 U.S. 1, 6 (2006) ("[T]he existence of duress" in a

case "normally does not controvert any of the elements of the offense itself.").[1] In other words, rather than *contradicting* the elements necessary to establish guilt, duress *overrides* them and "negates a conclusion of guilt." *Id.* at 7 (internal quotation marks omitted).

This point can be expressed in terms of fundamental principles of criminal law. "Criminal liability is normally based on the concurrence of two factors, an evil-meaning mind [*i.e. mens rea*] and an evil-doing hand [*i.e. actus reus*]. . . ." *Bailey*, 444 U.S. at 402 (brackets and internal quotation marks omitted); *see also* 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.1 (3d ed. 2018) (W. LaFave) ("It is commonly stated that a crime consists of both a physical part and a mental part; that is, both an act or omission . . . and a state of mind."). Duress assumes that the defendant's conduct satisfied these components. *See Bailey*, 444 U.S. at 402 (explaining that "coercive conditions" may "negate[] a conclusion of guilt" for the evil-doing hand "even though the necessary *mens rea* was present"). Indeed, the rationale behind the duress defense:

> is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Nor is it that the defendant has not engaged in a voluntary act. Rather it is that, even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is excused because he lacked a fair opportunity to avoid acting unlawfully.

---

[1] We recognize that it is possible that duress could controvert some offense elements. For instance, the Supreme Court has suggested that duress may negate a *mens rea* element requiring a defendant to act *maliciously* because *malice* means "the intent, *without justification or excuse*, to commit a wrongful act." *Dixon*, 548 U.S. at 6 n.4 (emphasis added) (brackets and internal quotation marks omitted).

2 W. LaFave § 9.7(a) (footnotes and internal quotation marks omitted).

Duress is therefore typically independent of the intent with which the crime is committed; rather, it concerns *why* the crime was committed. *See Rosemond v. United States*, 572 U.S. 65, 86, 88–90 (2014) (Alito, J., concurring in part, dissenting in part) (explaining that "except in narrow circumstances, necessity and duress do not negate the *mens rea* required for conviction" because the defenses speak to a person's *motives*—not his intent). Although motive is often persuasive regarding the plausibility that an accused committed the offense, it "is not an essential element of a criminal offense." *United States v. Tolliver*, 730 F.3d 1216, 1223 (10th Cir. 2013) (internal quotation marks omitted); *see also Havens v. James*, 76 F.4th 103, 114 n.12 (2d Cir. 2023) ("It is well established that the 'motives' that prompt one's conduct are not the same as the mental state associated with that conduct. The criminal law distinguishes between motive, on the one hand, and 'intent (or purpose),' on the other.").

Three cases illustrate how these abstract principles play out in practice. In each, the defendant claimed that fear of harm was inconsistent with the *mens rea* required for the offense. In *Dixon v. United States* the defendant was convicted of *knowingly* receiving a firearm while under indictment and *willfully* making false statements in connection with the acquisition of a firearm. *See* 548 U.S. at 3. The defendant claimed that she committed these charged acts only because her boyfriend threatened to kill her or hurt her daughters if she did not comply with his commands. *See id.* at 4. Before the Supreme Court she argued that it was improper to place on her the burden of proving

duress, because due process places the burden on the government to prove beyond a reasonable doubt all the elements of the offense and the government could not prove the necessary intent without establishing the absence of duress. She contended that she could not *knowingly* receive a firearm or *willfully* make false statements because "she did not freely choose to commit the acts in question." *Id.* at 6. The Supreme Court disagreed. It explained that a person can still *know* that she is making false statements and breaking the law by buying a firearm while under indictment even if her "will was overborne by the threats made against her and her daughters." *Id.* Accordingly, the Court held that "the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully." *Id.* at 7; *see also Bailey*, 444 U.S. at 396 n.1, 408, 415 n.11 (explaining that duress and necessity do not negate the *mens rea* of 18 U.S.C. § 751, which makes it unlawful to *knowingly* escape the custody of a penal institution).

In *Martin v. Ohio*, 480 U.S. 228, 230 (1987), the Supreme Court considered whether due process permitted the State of Ohio to place the burden of proving self-defense on a defendant charged with aggravated murder of her husband. Under the Ohio statute, aggravated murder consisted of "purposely causing the death of another with prior calculation or design." *Id.* at 233. The defendant argued that she acted in self-defense, which required proof that: (1) she was "not at fault in creating the situation giving rise to the argument" with the victim, (2) she "had an honest belief that she was in imminent danger of death or great bodily harm, and that her only means of escape from such danger was in the use of such force," and (3) she "did not violate any duty to retreat

10

or avoid danger." *Id.* at 230. She argued that "the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former." *Id.* at 234. The Supreme Court was not persuaded. It held that Ohio could place the burden of proving self-defense on the defendant because "none of her self-defense evidence raised a reasonable doubt about the State's proof that she purposefully killed with prior calculation and design." *Id.* at 233. In so holding, the Court recognized that a defendant can *purposefully* kill another even if she has an "honest belief that she [is] in imminent danger of death or great bodily harm" absent prompt action. *Id.*

Finally, in *United States v. Leal-Cruz*, 431 F.3d 667, 668 (9th Cir. 2005), the Ninth Circuit held that a defendant could constitutionally be required to bear the burden of proving duress as a defense to a conviction under 8 U.S.C. § 1326 for attempted illegal reentry into the United States after deportation. The *mens rea* required for conviction was "having the purpose, *i.e.*, conscious desire, to reenter the United States without the express consent of the Attorney General." *Id.* at 671 (brackets and internal quotation marks omitted). The defendant testified that he entered the United States to escape Mexican police officers who previously "beat him up and left him for dead." *Id.* at 669. The Ninth Circuit explained that a defendant can have "the 'conscious desire' to enter the country, even if the act of crossing the border was done to escape harm," *id.* at 673, because duress "does not necessarily negate the intent required to commit a specific intent offense," *id.* at 671.

These cases teach that fear (as with duress) typically does not negate the *mens rea* required for conviction. Ms. Dixon *knowingly* and *willfully* committed her crimes; Ms.

11

Martin *purposely* and *with prior calculation and design* committed hers; and Mr. Leal-Cruz had the *conscious desire* to commit his. These *mentes reae* existed even if all three people acted only to avoid adverse consequences. *See Rosemond*, 572 U.S. at 81 n.10 (recognizing that "the intent to undertake some act is perfectly consistent with the motive of avoiding adverse consequences which would otherwise occur" (ellipsis and internal quotation marks omitted)).

With this background in mind we hesitate to say that duress negates the *mens rea* or *actus reus* of drug conspiracy. We need not resolve this issue definitively, however, as the government's brief on appeal appears to agree—and certainly does not dispute—that Defendant admitted the elements of conspiracy and that duress does not negate those elements. We therefore proceed from the assumption that there was a sufficient factual basis for the elements of conspiracy.

### B.    Discretion to Accept or Reject a Guilty Plea

We next address the district court's discretion in accepting or rejecting guilty pleas. Although Fed. R. Crim. P. 11 states that "the court must determine that there is a factual basis for the plea" before it accepts a plea, it says nothing about possible affirmative defenses. In the absence of a mandatory rule, the circuit courts to address the issue have apparently all agreed that a district court has discretion to accept a defendant's guilty plea, even if the proffered facts support an affirmative defense, so long as the elements of the offense are established. *See, e.g.*, *United States v. Ortiz*, 927 F.3d 868, 877–78 (5th Cir. 2019) (allowing district courts to accept guilty pleas accompanied by an "affirmative defense that does not negate any offense element"); *United States v. Smith*,

160 F.3d 117, 123 (2d Cir. 1998) (concluding no error in accepting guilty plea where defendant "allude[s]" to a justification defense that "negates none of the offense elements"); *cf. United States v. Buonocore*, 416 F.3d 1124, 1129 (10th Cir. 2005) (recognizing that "when there is a strong factual basis for the plea, it is not unconstitutional for a court to accept a guilty plea despite the defendant's professed belief in his innocence"). Since we assume that Defendant admitted the elements of conspiracy, the district court could have accepted his guilty plea despite his claim of duress.

By the same token, however, a district court also has discretion to *reject* a guilty plea when the defendant claims his innocence. *See United States v. Lucas*, 429 F.3d 1154, 1157–58 (7th Cir. 2005) (holding no error in rejecting guilty plea where defendant equivocated on an element of the offense and testified that she only acted "out of ignorance and duress and stress" (internal quotation marks omitted)); *United States v. Rashad*, 396 F.3d 398, 401 (D.C. Cir. 2005) ("The district court is certainly not required to accept every guilty plea it is tendered, let alone the guilty plea of every defendant who maintains his innocence; indeed, the district court has considerable discretion to decide whether a guilty plea is appropriate in the circumstances of the particular case."); *United States v. Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987) ("When a defendant attempts to couple a guilty plea with an assertion of facts that would negate his guilt, a judge may properly treat this assertion as a protestation of innocence. Though a judge may enter a judgment upon a guilty plea offered under these circumstances, he is not required to do so."); *cf. Buonocore*, 416 F.3d at 1131 (relying on the "broad discretion that Rule 11 affords district courts in rejecting [pleas under *North Carolina v. Alford*, 400

13

U.S. 25 (1970),] and nolo pleas" to hold that district court can adopt a "general policy against *Alford* or nolo pleas").[2]

### C.    Rejection of Defendant's Guilty Plea

Defendant does not challenge the above understanding of a district court's discretion in handling guilty pleas accompanied by affirmative defenses. Instead, he makes two arguments specific to the rejection of his plea. Neither requires reversal.

First, noting that the district court ultimately (months later) ruled that Defendant could not raise the defense at trial because of lack of factual support, Defendant argues that the flaws in his duress defense were sufficiently apparent during the plea colloquy that the judge should have rejected the duress defense from the outset and accepted his plea. But Defendant did not raise this argument at the plea hearing (nor did the government for that matter). This argument is therefore forfeited, and we review only for plain error. *See United States v. Howard*, 784 F.3d 745, 748 (10th Cir. 2015) ("[B]ecause Defendant failed to object below on the grounds argued here [on appeal], we review only for plain error."); *United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011) (applying plain-error review where defendant never objected in district court that his plea had not been knowing or voluntary but then later argued on appeal that his plea was not knowing

---

[2] "A plea of nolo contendere is a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." *Buonocore*, 416 F.3d at 1127 n.2 (internal quotation marks omitted). An *Alford* plea "is a plea denominated as a guilty plea but accompanied by protestations of innocence." *Id.* "Courts determining whether to accept *Alford* pleas are to treat them as pleas of nolo contendere." *Id.*

and voluntary).[3]

To obtain a reversal on the grounds of plain error, the objecting party must establish that (1) the lower court committed an error, (2) the error was plain, (3) the error prejudiced that party in that a contrary result would have been likely in the absence of the error, and (4) leaving the error uncorrected would seriously affect "the fairness, integrity, or public reputation of judicial proceedings." *Howard*, 784 F.3d at 748 (internal quotation marks omitted). "An error is plain if it is clear or obvious under current, well-settled law," in that "there is precedent directly on point from the Supreme Court or the Tenth Circuit, or there is a consensus in the other circuits." *United States v. Warrington*, 78 F.4th 1158, 1167 (10th Cir. 2023) (internal quotation marks omitted). Failure to establish any one of these elements precludes reversal. *See id.* at 748–49.

We can easily reject Defendant's argument for failure to satisfy the second requirement; he does not show that the district court *plainly* or *obviously* erred by not exploring or ruling on the merits of Defendant's claim of duress at the plea hearing. To begin with, Defendant does not provide any authority suggesting that a court *must* cross-examine a defendant at the guilty-plea stage about the merits of a potential affirmative defense before rejecting a guilty plea. And there are cases suggesting the contrary. *See Gomez-Gomez*, 822 F.2d at 1011 ("[W]hen a defendant casts doubt upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court

---

[3] Judge Rossman would conclude, under the circumstances, Defendant preserved this argument. But she agrees that Defendant's argument fails even if preserved.

may resolve such doubts against the plea."); *United States v. Tillman*, 504 F. App'x 729, 733 (10th Cir. 2012) (finding no error in rejection of guilty plea where defendant "initially stated he was not guilty," "disputed many of the facts set forth by the government," and "changed his story" throughout the plea colloquy); *United States v. Demikh*, 683 F. App'x 533, 535 (8th Cir. 2017) (finding no error in rejecting guilty plea where defendant "equivocated throughout both his plea hearings on whether [an individual] had coerced him into committing armed bank robbery" because "a coercion defense 'negates a conclusion of guilt'"). We recognize that two of these cases are unpublished. But even an unpublished opinion can show that the law is not *clearly* to the contrary. *Cf. Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) ("[A]n unpublished opinion can be quite relevant in showing that the law was *not* clearly established. . . . [W]e would be hard-pressed to say that a proposition of law was clearly established at a time when an unpublished opinion by a panel of this court said the opposite.").

In any event, we can also reject Defendant's argument for failure to establish the first requirement of plain error—namely, that there be an error. We see no abuse of discretion by the district court in this case. Consider the context. It is apparent that defense counsel did not anticipate that Defendant would assert an affirmative defense at his plea colloquy. When defense counsel first asked Defendant questions to solicit the factual basis for the guilty plea, Defendant did not offer any story of duress. It was only when the government asked follow-up questions that Defendant first mentioned that he participated in the conspiracy because "agents" in California threatened to harm his

16

sister-in-law's daughter. R., Vol. I at 75. Later, when Defendant was questioned by the district court, he yet again shifted stories. He explained that he used to work for a Mexican drug cartel and asked the cartel to smuggle his sister-in-law's daughter into the United States. The cartel agreed to help if Defendant participated in a drug transaction in the United States and then used threats of violence to his relative to ensure that Defendant followed through on the drug transaction.

To be sure, even Defendant's final account presented a questionable duress defense. But defense counsel clearly thought that the account precluded a guilty plea. And even if further questioning may have made a duress defense unsustainable, we think it would have been inadvisable for the district court to test such a defense when defense counsel was obviously unprepared. For one thing, there was no reason to think that the matter needed to be resolved on the spot. If defense counsel later researched the facts and the law and determined that Defendant had no duress defense, there was no bar to a second guilty-plea proceeding where the same plea bargain likely would have been available if there had been little delay. Rejecting the plea in the circumstances was the prudent course.

Defendant next contends that the district court did not realize that it had discretion to accept the plea even if Defendant had an affirmative defense, and therefore erred in not exercising that discretion. The problem with that contention is, again, that it was not raised until this appeal. We recognize that Defendant and defense counsel repeatedly urged the district court to accept the guilty plea. But defense counsel did not inform the court that it could accept a guilty plea accompanied by protestations of innocence. After

17

the district court first rejected the guilty plea, defense counsel did not raise any objections but, rather, asked for a recess. After the recess, defense counsel summarized the district court's ruling. He emphasized that Defendant had two "path[s]" before him. R., Vol. I at 82. Defendant could admit that he "willingly and knowingly" participated in the conspiracy *or* he could continue to insist that he acted only under duress. According to defense counsel, if Defendant chose the latter path, "trial and potentially a much harsher sentence" would follow. *Id.* If defense counsel thought that the district court might change its mind on accepting the plea if it only knew that it had discretion to do so despite the coercion claim, he kept that thought to himself.

Thus, the district court was not put on notice that it was making an error by assuming it could not accept the plea. If it had been put on notice, we would have had an unambiguous record of whether the court was exercising discretion or thought it had no discretion. And if the court really had thought that it lacked discretion, Defendant might have changed the court's mind. This is why we require parties to preserve issues in the trial court. When they fail to do so, they forfeit the issue on appeal and we review their arguments only for plain error. *See United States v. Vidal*, 561 F.3d 1113, 1118 (10th Cir. 2009) (applying plain-error review because a "general plea of leniency to the district court judge" is not "an express objection challenging the validity of [a] plea"); *Buonocore*, 416 F.3d at 1127–28 (reviewing new argument for plain error because defendant argued in district court only that the court could not have a policy against *Alford* pleas but argued on appeal that the district court's error was mischaracterizing defendant's proffered plea as an *Alford* plea).

18

Again, Defendant has not established the second element of plain-error review—a *plain* error. His brief on appeal argues that two statements by the district court prove that it did not think it had any discretion to accept the plea: (1) "I cannot accept the plea with the idea you were compelled to commit the crime by these bad people under threat to a family member," R., Vol. I at 97, and (2) "I could not accept the guilty plea," *id.* at 78. We are not persuaded.

We "traditionally presume, absent some indication in the record suggesting otherwise, that trial judges . . . know the law and apply it in making their decisions." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007) (Gorsuch, J.) (brackets and internal quotation marks omitted). Accordingly, we will presume that the district court knew that it had discretion.

That presumption is hardly overcome by the two quoted statements by the district court. To begin with, Defendant omits that before using *cannot* and *could not*, the district court said, "I *will not* accept" the guilty plea. R., Vol. I at 76 (emphasis added). The phrase *will not* suggests the district court was expressing its will—that is, its discretion—to reject the guilty plea, not simply obeying a perceived legal command. Further, the phrases *cannot* and *could not* do not necessarily imply a speaker thinks it has no discretion in a decision. Such language is often used in ordinary discourse simply to reflect a personal decision. When a homeowner tells a neighbor that "I cannot let you borrow the lawnmower" or a parent tells a child that "I could not let you go to the movies yesterday," the speakers imply that they considered several options before ultimately choosing one over the other. They do not necessarily imply that they thought themselves

19

barred from choosing an otherwise viable option. So too here. The district court's statements do not suggest that it saw itself as unable to accept a guilty plea accompanied by protestations of innocence because of a legal bar. *Contrast Rashad*, 396 F.3d at 402 (concluding error where district court stated that a defendant "*cannot plead under the law*" because he said "he [was] not guilty" and was not "willing to admit guilt").[4]

### III.   CONCLUSION

We **AFFIRM** the judgment below.

---

[4] In a Rule 28(j) letter Defendant pitches a new argument. He argues that *In re Vasquez-Ramirez*, 443 F.3d 692 (9th Cir. 2006), suggests that the district court actually had *no discretion whatsoever* to reject his guilty plea because the plea satisfied all of Rule 11(b)'s requirements—including having a sufficient factual basis. But "it is well established that we will not consider issues raised for the first time in a Rule 28(j) letter." *Flores-Molina v. Sessions*, 850 F.3d 1150, 1172 n.16 (10th Cir. 2017) (brackets and internal quotation marks omitted). And even if we did consider *In re Vasquez-Ramirez*, we are not convinced that it helps Defendant. *In re Vasquez-Ramirez* found that a district court erred in rejecting an unconditional guilty plea *unaccompanied* by any protestations of innocence that otherwise satisfied Rule 11(b)'s requirements. *See* 443 F.3d at 694–95; *see also United States v. Martin*, 528 F.3d 746, 750 (10th Cir. 2008) (citing *In re Vasquez-Ramirez* to express "doubts" on whether a district court can reject a guilty plea simply to "avoid confusing the jury or complicating the evidentiary issues"). But Defendant did not offer an unconditional guilty plea unaccompanied by protestations of innocence. Rather he repeated the same refrain throughout his plea colloquy: he acted only under duress. *In re Vasquez-Ramirez* recognizes that when a defendant "protests his innocence," as in this case, the "trial court has discretion to . . . reject a guilty plea." 443 F.3d at 700 (internal quotation marks omitted).