**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 1, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN BENJAMIN THORNTON,

    Defendant - Appellant.

No. 25-2076
(D.C. No. 2:21-CR-00878-KG-JFR-1)
(D. N.M.)

---

### ORDER AND JUDGMENT*

---

Before **PHILLIPS**, **EID**, and **FEDERICO**, Circuit Judges.

---

Defendant John Benjamin Thornton appeals the district court's judgment revoking his term of supervised release. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

    * After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. Pro. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

**I**

In 2023, Thornton pleaded guilty to one count of cyberstalking and eight counts of transmitting threats in interstate commerce. The district court sentenced him to a term of imprisonment of 60 months, to be followed by a three-year term of supervised release. He appealed pro se, seeking to withdraw his guilty plea, but this court affirmed the district court's judgment. *United States v. Thornton*, No. 23-2201, 2024 WL 4471085, at \*1 (10th Cir. Oct. 11, 2024).

Thornton completed his term of imprisonment and on March 27, 2025, he began serving his three-year term of supervised release. One condition of his supervised release required him to report to the probation office in the federal district where he was authorized to reside, within 72 hours of his release.

Upon his release from the Federal Correctional Institute in Pekin, Illinois, Thornton was instructed to report to the probation office in Albuquerque, New Mexico. He was provided with an itinerary and a bus ticket to Albuquerque. But he did not travel to Albuquerque or report to the probation office there. Instead, he traveled to Denver, Colorado.

Once he arrived in Denver, Thornton reported to the probation office in Denver. He presented them with a "request for relocation to Denver" he had drafted that contained a "protective order." R. I at 202 (capitalization

2

omitted). The "protective order" expressed his concern that Thornton was in danger from the "Surreños" and "Nuevos Mexicos" gangs after his encounters with a gang member in Otero County Prison in Chapparal, New Mexico. The order also stated that another inmate later warned him that the New Mexico gang member inmate had "put a street stomp order out on [him]." *Id.* (internal quotation marks omitted). Thornton believed New Mexico contained many members of the two gangs, so he had decided not to report there as he was ordered to do.

On April 1, Thornton contacted his New Mexico probation officer by phone and informed her about his fears about returning to the District of New Mexico. This was the first time she learned of his concerns. She was surprised because he had not mentioned those concerns to the facility prior to his release or told them that he intended to report to Denver rather than New Mexico. The probation officer immediately investigated his allegations but found no validity to them. But she agreed to help Thornton by submitting a transfer of supervision request to attempt to permit him to remain in Denver.

The probation office in Denver declined to accept the transfer. Notably, when Thornton met with the Denver probation officer about the transfer, he made several comments about her personal life and told her he had "looked her up" on the Internet "because he wanted to know who he was

3

dealing with." R. III at 28. This made the officer extremely uncomfortable, and the interview was terminated.

Later and following a hearing, the district court found Thornton had violated a mandatory condition of his supervised release by failing to report to the New Mexico probation office as ordered.[1] The court terminated his term of supervised release and sentenced him to imprisonment for five months, to be followed by an additional three-year term of supervised release. This timely appeal follows.

## II

A district court may revoke a defendant's term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). We review the decision to revoke supervised release for an abuse of discretion. *See United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2016). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *United States v. Piper*, 839 F.3d 1261,

---

[1] The district court also found he had violated two other supervised release conditions, by failing to cooperate and comply with the probation office's Computer Restriction and Monitoring program, and by failing to follow the instructions of the probation officer related to the conditions of his supervision. Thornton does not challenge those violations in this appeal, and the government does not argue that the district court's judgment should be upheld based on the unchallenged violations. *See* Aplee. Br. at 2 n.1.

1265 (10th Cir. 2016). "Legal questions relating to the revocation of supervised release are reviewed *de novo*." *Jones*, 818 F.3d at 1097 (internal quotation marks omitted). "A factual finding is clearly erroneous only if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Piper*, 839 F.3d at 1270 (internal quotation marks omitted).

On appeal, Thornton argues: (1) he did not willfully or intentionally violate his supervised release; (2) his New Mexico probation officer consented to his actions when she asked the District of Colorado to accept a transfer of supervision; and (3) he was not given a chance to report to the District of New Mexico after the transfer was denied, so the filing of charges in this case was "nothing more than a 'gotcha.'" Aplt. Opening Br. at 7. None of these arguments have merit.

## A

There is ample evidence to support the district court's conclusion that Thornton violated the terms of his supervised release. But he argues the violation was not willful or intentional because he believed that his life was being threatened by New Mexico gangs. Assuming a willful or intentional violation was required for revocation – an issue Thornton does not specifically discuss – his argument actually relies on necessity or duress rather than a lack of willfulness or intent. *See Dixon v. United States*, 548

U.S. 1, 7 (2006) ("Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.") (internal quotation marks omitted); *United States v. Romero*, 132 F.4th 1208, 1214 (10th Cir.) (same), *cert. denied*, 146 S. Ct. 176 (2025).

We will assume without deciding that a district court would abuse its discretion by finding a violation that the defendant proved he had committed while under legal duress. *Cf. United States v. Rife*, 835 F.2d 154, 156 (7th Cir. 1987) (suggesting, in response to duress defense raised at probation revocation hearing, that revocation of probation would be inappropriate in the case of "extreme circumstances" where "the actor was actually forced to commit the act"). But although he mentions necessity or distress, Thornton has failed to develop an adequate appellate argument on this issue.

The affirmative defense of duress requires the defendant to establish "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." *Romero*, 132 F.4th at 1214

(internal quotation marks omitted).[2] Thornton has made no effort to show that he meets these factors, nor does he point us to where he established the elements of a duress defense before the district court. His argument is therefore insufficiently developed for appeal and is waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have

---

[2] The defense, known interchangeably as duress, necessity or justification, *see United States v. Butler*, 485 F.3d 569, 572 n.1 (10th Cir. 2007), has also been formulated using a four-factor test:

(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

(2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm."

*Id.* at 572 (brackets and internal quotation marks omitted).

Regardless of which specific test is appropriate here, Thornton has waived the issue through inadequate appellate briefing.

7

declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").[3]

**B**

Thornton next argues that his failure to report as required was excused when his New Mexico probation officer asked the District of Colorado to accept a transfer of his supervision to Colorado. He notes he was permitted to stay in Denver while the request was pending. But his supervised release was not revoked because he stayed in Denver after arriving there. It was revoked because he failed to report to the probation office in New Mexico in the first place, as instructed. He fails to show the subsequent permission excused his earlier violation. We see no basis to conclude the district court abused its discretion by relying on that violation to revoke his supervised release, even if he had received after-the-fact permission to remain in Denver while his transfer request was pending.

---

[3] Thornton also argues that the district court erred by declining to decide whether his fear of being killed by the gangs was credible. He urges us to remand with instructions to make this finding. But even if he established a credible fear, he would still have to satisfy the other factors required to establish a duress or necessity defense, including that the harm was immediate or imminent and that he had no reasonable opportunity to escape the threatened harm other than by violating his supervised release terms. As noted, he has waived any appellate argument concerning those factors by failing to brief them. We therefore decline to reverse or remand for a further finding on the threat issue.

**C**

Finally, Thornton argues that he should have been given a chance to report to New Mexico after his request for transfer was denied, and that failure to give him that opportunity made "the filing of charges in this case . . . nothing more than a 'gotcha.'" Aplt. Opening Br. at 7. But he fails to show that failure to accord him such a second chance excused the initial violation or made it an abuse of discretion to revoke his supervised release. AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge